Floyd F. McNAIR et al., Plaintiffs-in-Error,

v.

CITY OF OKLAHOMA CITY, a Municipal Corporation, Defendant-in-Error,

Home Mortgage & Investment Co., a corporation, and Valley Verde Company, a joint venture, Intervenors-in-Error.

No. 44563.

Supreme Court of Oklahoma.

Oct. 26, 1971.

Rehearing Denied Dec. 6, 1971.

Brown, Verity & Brown, Gordon F. Brown, Oklahoma City, for plaintiffs in error.

Barefoot, Moler & Claro, Edward H. Moler, Oklahoma City, for intervenors in error.

Roy H. Semtner, Municipal Counselor, Tom B. McGee, Asst. Municipal Counselor, for defendant in error.

JACKSON, Justice:

This is an appeal by plaintiffs in the trial court from judgment for defendant, the City of Oklahoma City, and intervenors, Home Mortgage and Investment Company, a corporation, and Valley Verde Company, a joint venture, entered after a demurrer to plaintiffs' evidence was sustained.

The action in the trial court was an attack upon an amendment to the zoning ordinances of Oklahoma City and a request for an injunction against the issuance of building permits pursuant thereto.

Basically, the amendment was for the purpose of permitting, and the plaintiffs are trying to prevent, the re-location of Mercy Hospital on a site in the northwest corner of the northwest quarter of a certain Section 14 about 15 miles northwest of down-town Oklahoma City. That section is bounded on the east by Portland Avenue, on the north by Memorial Road, on the west by Meridian Avenue, and on the south by Northwest 122nd Street. The portion actually described in the amendment consists roughly of the northwest half of the northwest quarter and was divided into six irregularly shaped contiguous tracts. Tract 1, to be occupied by the hospital itself, about 35 acres, is generally the northwest quarter of the northwest quarter. Tracts 2, 3 and 4, about 10 or 12 acres each, are across a curving street from Tract 1 on the east, southeast and south. These four tracts were all zoned "D–1 Restricted Commercial", with Tracts 2, 3 and 4 intended for office and professional buildings. Tract 5, adjoining Tracts 2 and 3 on the east, was zoned "D Multiple Dwelling", and Tract 6, across a street east, southeast and south of Tract 5, was zoned "B Two Family Dwelling". Immediately east of Tract 6 and extending north and south are two "tiers" of lots which, under existing ordinances not changed by the amendment, are zoned for single-family dwellings. These lots separate the re-zoned area from Quail Ridge Addition, to be mentioned hereinafter.

Intervenors, Home Mortgage and Investment Company and Valley Verde Company, are the owner and developer, respectively, of the lands described in the amendment. The investment company owns substantially all of Section 14 with the exception of the residential properties owned by plaintiffs in this case.

Plaintiffs, 13 couples and 7 individuals, own and occupy 20 homes in two small platted areas in Section 14 to which we shall refer as Rolling Hills Second and Quail Ridge. About half of them live in Rolling Hills Second, a triangular shaped addition in a portion of the east half of the southeast quarter. The rest live in Quail Ridge, an addition consisting of lots on one street in the shape of an elongated "U" extending southward from the north boundary of the west half of the northeast quarter. With the exception of these 20 homes, Section 14 was at time of trial essentially undeveloped, unoccupied and rural in character. Construction of an 18-hole golf course is under way in portions of the south half of the section. Small portions in the southeast and southwest corners, and midway between the two, are zoned "E Commercial" and "D Multiple Dwelling". A lot directly across Memorial Road north of Quail Ridge is zoned "E Commercial" and used for restaurant purposes.

Highway development in the area, in part financed with federal funds, is proceeding according to the Oklahoma City Area Regional Transportation Study ("OCARTS"), which has preliminary approval of the Bureau of Public Roads. This study, made in a cooperative effort by several federal, state and local agencies, calls for the improvement of Portland Avenue and Memorial Road to interstate highway standards, with actual construction to begin about 1975; contracts for surveying and preliminary design have already been let and that part of the work is in progress. Memorial Road, on the north side of the section, will be a part of the "north loop" around Oklahoma City. The same study also provides for the improvement of Meridian Avenue, on the west, to interstate highway standards with limited access, for use as a north-south artery of traffic. At the intersection of Memorial and Meridian, where the projected new Mercy Hospital would be built, there will be a traffic interchange, thus providing ready access to the site from all portions of the metropolitan area. Although, as plaintiffs point out, these plans are still subject to change, they cannot be said to be in the realm of mere conjecture. Since survey and preliminary design work is under way, we cannot say that the plans were without probative value.

Most of the evidence thus far summarized was without substantial conflict, although some of it was given on cross examination.

There was also testimony from several of the plaintiffs themselves, in which they gave their reasons for not wanting Mercy Hospital located in the area. In general, they objected to the increased traffic that would result and felt that the development would make the area less desirable for family residential purposes. Several of them indicated that they had been led to believe by a prior developer (not the intervenors in this case) that most of the section would remain zoned for single family residences, before they purchased their lots. Some of them felt that the re-zoning of the northwest part of the section would decrease the value of their properties, although there was conflicting evidence on that point. In this connection, we note that Rolling Hills Second is about three quarters of a mile southeast of the re-zoned area and that existing "E Commercial" and "D Multiple Dwelling" areas along the south boundary of the section are much closer. From comments in the record, it appears that the "E Commercial" classification permits, among other things, beer taverns, shopping centers and drive-in theaters. Quail Ridge is much closer to the re-zoned area (about 300 feet at the nearest point). However, one of plaintiffs' expert witnesses, the Planning Director of Oklahoma City, referred to the zoning classifications in the re-zoned area as

"step-downed zoning". From exhibits in evidence, it appears that the zoning classifications, from west to east (toward Quail Ridge), provide for progressively less intense uses of the land—D–1 Restricted Commercial, D Multiple Dwelling, B Two Family Dwelling and (immediately west of Quail Ridge and separating it from the re-zoned area) A Single Family Dwelling.

Plaintiffs also introduced in evidence a report of the Areawide Health Planning Organization ("AHPO") indicating that there was no need for more hospital beds in the northwest quadrant of Oklahoma City. The AHPO is a unit of the Community Council of Central Oklahoma, described by its Executive Director as "a citizens group, self-appointed". On the other hand, another witness for plaintiffs, Sister Mary Coletta, Executive Director of Mercy Hospital, said that studies by professional hospital consultants she described as "probably the most outstanding in the world" showed that two-thirds of the future population growth of Oklahoma City would be in the northwest area, and that the proposed hospital site in the northwest corner of Section 14 was the best of about 40 that had been considered.

In the briefs in this court, plaintiffs argue generally, under three propositions, that the court erred in sustaining the demurrer to plaintiffs' evidence.

 It is well settled that the action of a municipality in enacting, amending, or refusing to amend a zoning ordinance, is a legislative function. O'Rourke v. City of Tulsa, Okl., 457 P.2d 782. It is equally well settled that if the validity of the legislative classification for zoning purposes is "fairly debatable", the legislative judgment must be allowed to control. Village of Euclid v. Ambler Realty Company, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; Oklahoma City v. Barclay, Okl., 359 P.2d 237; In re Dawson, 136 Okl. 113, 277 P. 226.

 When the validity of a municipal zoning ordinance is challenged, it is the duty of the court to determine whether the passage of such ordinance is an arbitrary, unreasonable and capricious exercise of the police power. Oklahoma City v. Barclay, supra. This determination is made by applying the "fairly debatable" rule. Hoffman v. City of Stillwater, Okl., 461 P.2d 944.

The case as presented was clearly, in form and substance, an action of equitable cognizance. The relief sought was an injunction against the enforcement of an allegedly invalid, unreasonable, unconscionable and capricious ordinance, which would allegedly cause plaintiffs irreparable harm and injury for which there was no adequate remedy at law.

 In an action of equitable cognizance, a demurrer to plaintiffs' evidence will be treated as a motion for judgment, and in passing upon such demurrer, the trial court should weigh and consider all of the evidence submitted, whether favorable to plaintiffs or not. Hoffman v. City of Stillwater, supra; Forshee v. Anderson, Okl., 332 P.2d 688; Henderson v. Gifford, Okl., 318 P.2d 404. The judgment of the trial court in a case of equitable cognizance will not be disturbed on appeal unless it is clearly against the weight of the evidence. Carraco Oil Co. v. Roberts, Okl., 397 P.2d 126.

 Under these rules, and after a careful review of the record before us, we cannot say that the judgment of the trial court is clearly against the weight of the evidence, which we have summarized in some detail. In announcing judgment from the bench, he specifically found " * * * that there was no evidence that the City Council acted arbitrarily or capriciously; and on the other hand, the Court finds that the evidence shows that the action of the City Council is supported * * *". Under the conflicting evidence as to the area's suitability .for the new zoning classification, the conflicting evidence as to the effect of the new classification upon the properties of plaintiffs, and the evidence as to the proposed highway development in the area, the "fairly debatable" rule pre-

cludes judicial interference with the legislative judgment, which must be allowed to control.

The judgment of the trial court is affirmed.

All the Justices concur.