CLOUDI MORNINGS, LLC. v. CITY OF BROKEN ARROW



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:CLOUDI MORNINGS, LLC. v. CITY OF BROKEN ARROW

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 CLOUDI MORNINGS, LLC. v. CITY OF BROKEN ARROW
2019 OK 75
Case Number: 117500
Decided: 11/19/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 75, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

CLOUDI MORNINGS, LLC., and AUSTIN MILLER, individually, Plaintiffs/Appellees,
v.
THE CITY OF BROKEN ARROW, Defendant/Appellant.

APPEAL FROM THE TULSA COUNTY DISTRICT COURT

Honorable Patrick Pickerill, Trial Judge

¶0 The voters of the State of Oklahoma passed State Question 788, codified at 63 O.S. Supp. 2018 §420A et seq., on June 26, 2018, legalizing medical marijuana. Subsequently, the City of Broken Arrow enacted local zoning ordinances No. 3540 and 3542 in an attempt to incorporate the introduction of medical marijuana businesses into their community. On September 25, 2018, the plaintiffs/appellees, filed a Petition for Declaratory Judgment and Injunctive Relief in the Tulsa County District Court asking the court to make a legal determination that the City of Broken Arrow had no authority whatsoever to zone or otherwise regulate medical marijuana businesses within city limits. The trial court agreed with the plaintiffs, and on October 17, 2018, issued a declaratory judgment finding, as a matter of law, that Oklahoma cities were precluded from adopting regulations, zoning overlays, fees or other restrictions relating to medical marijuana business activities. The City appealed. The Oklahoma Legislature enacted 63 O.S. Supp. 2019 §425(f), as amended by SB 1030 (effective August 30, 2019) in an apparent attempt to clarify the voter approved enactment and to provide further direction for municipalities to incorporate marijuana businesses within their city limits. On June 24, 2019, we remanded the cause back to the Tulsa County District Court to enter Findings of Fact and Conclusions of Law specifically addressing: 1) whether Broken Arrow, though enactment of it ordinances, has "unduly change[d] or restrict[ed] zoning laws so as to prevent the opening of a retail marijuana establishment; and 2) the impact of the statutory amendment on the validity of the City ordinances. On October 18, 2019, the trial court entered an order answering our questions and making express findings of fact and conclusions of law. We now dismiss the appeal for lack of case or controversy.

APPEAL DISMISSED.

Trevor A. Dennis, Acting City Attorney, City of Broken Arrow,
Charles S. Plumb, Michael F. Smith, Jacob S. Crawford, Tulsa, Oklahoma, Attorneys for Appellant.

John E. Rooney, Jr., Ronald E. Durbin, Tulsa, Oklahoma, Attorney for Plaintiffs/Appellees.

KAUGER, J.:

¶1 We retained this cause to address the authority of a city, such as the City of Broken Arrow, to zone/regulate a medical marijuana establishment within city limits. However, because the cause lacks any case or controversy as to these plaintiffs, and is merely a request for an advisory opinion, we must dismiss the appeal.[1]

FACTS/PROCEDURAL POSTURE

¶2 On September 25, 2018, the plaintiffs/appellees, Cloudi Mornings and Austin Miller (collectively Cloudi Mornings) filed a Petition for Declaratory Judgment and Injunctive Relief in the District Court of Tulsa County. In the petition, Cloudi Mornings stated that it is an L.L.C. with its primary business activities located within the City of Broken Arrow and that Austin Miller was a resident of Broken Arrow.

¶3 They contend that as a "business within city limits," they have a vested interest in City enacted medical marijuana rules related to the voter approved June 26, 2018, Initiative Petition 788 which legalized medical marijuana in the State of Oklahoma. The Initiative Petition became codified as 63 O.S. Supp. 2018 §§420 et seq. (The Act).[2]

¶4 The original codification governed the legal possession of medical marijuana, caregiver licenses, dispensary licenses,[3] licensed commercial growers/packagers,[4] processing licenses,[5] transportation licenses;[6] and directed the establishment of a regulatory office under the Oklahoma State Department of Health (Health Department).[7] It also expressly allowed counties and cities to enact medical marijuana guidelines allowing license holders to exceed the state limits regarding legal possession.[8]

¶5 The Act included a provision on discrimination towards license holders[9] and and stated that "no city or local municipality may unduly change or restrict zoning laws to prevent the opening of a retail marijuana establishment."[10] It did not define "retail marijuana establishment." Cloudi Mornings argued that the statutes restricted cities from imposing regulations of activities authorized under the Act and that only the Health Department was entitled to impose any regulations.

¶6 The Health Department created regulations to govern activities under the Act. The regulations are found in the Oklahoma Administrative Code, Title 310, Oklahoma State Department of Health, Ch. 681 and were adopted August 1, 2018, and made effective on August 25, 2018.[11] The rules generally cover the application processes of the various licenses, renewals, inspections, inventory, audits, taxes, commercial facilities, packaging, and labeling. Nothing in the rules addressed zoning or location of establishments, but the rules did require premises to meet state and local electrical, fire, plumbing, waste and building codes.

¶7 According to Cloudi Mornings, the City of Broken Arrow met on September 18, 2018, and adopted Ordinance 3540 and 3542, as well as an Amended City of Broken Arrow Manual of Fees.[12] The ordinances purport to zone and restrict marijuana operations within the City, much like any other retail establishment. They address parking, building codes, require City permits and application fees, etc.

¶8 Cloudi Mornings did not assert that it was denied any permits, required to pay a particular fee or was prohibited from locating in a chosen location within the City limits in their Petition. Nor do they allege that the ordinances conflict with Health Department regulations and rules. They did attach to the Petition, an affidavit of plaintiff, Austin Miller, who identifies himself as the Manager of Cloudi Mornings. He states that: the company intends to conduct business in the City of Broken Arrow; the ordinances and fees completely frustrate their commercial purposes; and the ordinances will cause substantial and irreparable harm to the company and other individual residents of Broken Arrow.

¶9 Cloudi Morning argues that the City exceeded its authority by addressing any of these regulation issues all together, and they sought to have the City's efforts declared null and void. They also filed an application for emergency temporary restraining order and temporary injunction along with their Petition for Declaratory Judgment. On September 28, 2018, the City objected. It argued that Oklahoma Legislature expressly acknowledged that Cities would need zoning and regulations regarding a new industry which was once illegal, and that the Legislature included the express allowance for municipalities to enact reasonable, common sense ordinances.[13]

¶10 The trial court held a hearing on September 28, 2018. At the hearing, Cloudi Mornings argued that after medical marijuana became legal in the State of Oklahoma, they applied for their license, received it, engaged in business. Subsequently, however, the City of Broken Arrow created zoning which, if applied, would mean that Cloudi Mornings is engaged in growing in an area not properly zoned, and not in compliance with City's rules. They offered no measure of monetary damages they may have suffered, but noted that they already had plants growing and had already signed a lease.

¶11 On October 17, 2018, the trial court filed a Final Declaratory Judgment. It held that Oklahoma cities, as a matter of law, were precluded from adopting regulations, zoning overlays, fees or other restrictions to medical marijuana business activities authorized by the Act. Consequently, the City's enactment of the ordinances was not permissible and it enjoined the City from enforcing them. The City appealed and filed a motion to retain on October 31, 2018. We retained the cause on November 15, 2018, and the briefing cycle was completed on May 15, 2019, with the filing of the City's reply brief.

¶12 In the meantime, the Legislature, in the 2019 Legislative session amended portions of the Act. It enacted a new 63 O.S. Supp. 2019 §427 concerning licensure revocations. It also amended §§420 and 425 with multiple amendments. The amendments to §420 relate to record keeping and are not applicable to this cause.[14] The amendments to 63 O.S. Supp. 2019 §425 however are pertinent. The Legislature added to the subsection which originally stated that "[n]o city or local municipality may unduly change or restrict zoning laws to prevent the opening of a retail marijuana establishment." The addition states:

2. For purposes of this subsection, an undue change or restriction of municipal zoning laws means an act which entirely prevents retail marijuana establishments from operating within municipal boundaries as a matter of law. Municipalities may follow their standard planning and zoning procedures to determine if certain zones or districts would be appropriate for locating marijuana-licensed premises, medical marijuana businesses or any other premises where marijuana or its by-products are cultivated, grown, processed, stored or manufactured.

3. For purpose of this section, "retail marijuana establishment" means an entity licensed by the State Department of Health as a medical marijuana dispensary. Retail marijuana establishment does not include those other entities licensed by the Department as marijuana-licensed premises, medical marijuana businesses or other facilities where marijuana or any product containing marijuana or its by-products are cultivated, grown, processed, stored or manufactured.

¶13 Because of the legislative amendments, on June 24, 2019, we remanded the cause and ordered the trial court to enter findings of fact and conclusions of law addressing: 1) whether the ordinances had unduly changed or restricted zoning law so as to prevent the opening of a retail marijuana establishment and 2) the impact of 63 O.S. Supp. 2018 §42(f) on the ordinances. We directed the parties to supplement the appellate record with the court's findings within 90 days.

¶14 On October 18, 2019, the trial court filed its Findings of Fact and Conclusions of Law.[15] Regarding the facts, it found that:

1) Miller and Cloudi Mornings were actively engaged in the cannabis growing business within the municipality of the City of Broken Arrow;

2) the City ordinances zoned only "Retail Sales businesses," [a/k/a retail marijuana establishments or retail sales establishments], within the City, and such businesses were the only marijuana businesses required by the ordinances to submit an operational and business plan and apply for a City permit and licensing fee;

3) multiple establishments were currently and actively operating dispensaries within City limits; and

4) the Legislature added a subsection to 63 O.S. Supp. 2018 §425(f) which excluded locations where marijuana was grown from the definition of "retail marijuana establishment."

¶15 Regarding conclusions of law, the trial court determined that:

1) the plaintiff/appellees were engaged in an active cannabis growing business within the municipality of the City of Broken Arrow;

2) there is no specific statutory protection against undue changes or restrictions in municipal zoning as provided to a business engaged in the growing or processing of cannabis;

3) the ordinances did not unduly change or restrict zoning so as to prevent the opening of retail marijuana establishments; and

4) the statutory amendments operate as a subsequent clarification of the phrase "unduly change or restrict zoning laws' and defining the term "retail marijuana establishment."

APPEAL DISMISSED.

¶16 The City argues that: 1) cities possess the full power of local government and may enact ordinance to protect the public peace, order, health and safety; and 2) reasonable regulations to medical marijuana businesses operating within their jurisdiction fall squarely within the City's purview of authorized regulation. Cloudi Mornings argues that the Act only tasks the Health Department with regulating the marijuana industry and, consequently, cities are powerless to enact marijuana zoning ordinances.

¶17 Cities generally have the authority to enact zoning and regulatory ordinances.[16] The voter-approved version of the Act, acknowledged such authority when it noted that no city or local municipality may unduly change or restrict zoning to prevent the opening of a retail marijuana establishment.[17] The acknowledgment being that city zoning and regulation could occur as long as the ordinances enacted were not unduly changed or restricted in such a way that no retail marijuana establishment could open within city limits.

¶18 If there was any doubt as to the City's authority, the 63 O.S. Supp. 2019 §425 legislative amendments expressly state that:

1) an undue change or restriction of municipal zoning laws means an act which entirely prevents retail marijuana establishments from operating within municipal boundaries as a matter of law;

2) a "retail marijuana establishment" means an entity licensed by the State Department of Health as a medical marijuana dispensary but does not include other entities licensed by the Department as marijuana-licensed premises, medical marijuana businesses or other facilities where marijuana or any product containing marijuana or its by-products are cultivated, grown, processed, stored or manufactured; and

3) municipalities may follow their standard planning and zoning procedures to determine if certain zones or districts would be appropriate for locating marijuana-licensed premises, medical marijuana businesses or any other premises where marijuana or its by-products are cultivated, grown, processed, stored or manufactured.[18]

It is well settled that subsequent amendments to an act can be used to ascertain the meaning of the prior statute.[19] Where the meaning of a prior statute is subject to serious doubt and has not been judicially determined, a presumption arises that a subsequent amendment was meant to clarify, as opposed to change, the prior statute.[20] A subsequent statute clarifying a prior statute can be used to determine the meaning of the prior statute even if the interpretation affects alleged vested rights.[21]

¶19 Clearly, the Act authorizes the City to follow standard planning and zoning procedures as to marijuana growers such as Cloudi Mornings. The Act does not even apply the "unduly change or restrict" standard to growers such as Cloudi Mornings. This is a problem for Cloudi Mornings where it was not denied any city permits, required to pay a particular city fee, or prohibited from locating in a chosen location within City limits all together. Nor is there is any indication that the City's ordinances directly conflict with the Health Department regulations and rules.

¶20 At the trial court hearing of September 28, 2018, Cloudi Mornings admitted that if the City's zoning applied, then they would not be in compliance with the City's rules. They also insisted that City's ordinances and fees "completely frustrate their commercial purposes" and that ordinances will "cause substantial and irreparable financial harm to the company" and other Broken Arrow residents. Nevertheless, it appears the City was acting within its authority under the original enactment as approved by the voters. If the original enactment were unclear, the subsequent amendments certainly clarified the issue.

¶21 In short, there is no longer a case or controversy from which the trial court or this Court could declare any relief as to these particular plaintiffs. The rule does not change when a declaratory judgment is involved.[22] We do not issue advisory opinions.[23] We recognize that there are exceptions for matters which are of great public importance. While this may have been a matter of great public importance when it was enacted by the voters, the Legislature's subsequent action expressly authorizes City zoning. Here, without any indication that City's ordinances have exceeded what the Legislature authorized by the Act and its subsequent amendments, there is nothing for us to decide.[24] Furthermore, in so far as this cause is concerned, there is no indication that the City has enforced the zoning ordinances against Cloudi Mornings. Nor is there indication that Cloudi Mornings has sought and been denied a variance.[25] Accordingly, we dismiss the appeal.

CONCLUSION

¶22 The root of this cause is timing. The voters approved State Question 788 and the City of Broken Arrow responded with ordinances before the Oklahoma Legislature could expand and clarify the legislation. In the meantime, Cloudi Mornings sought and obtained a license to legally grow medical marijuana. It set up shop before the City of Broken Arrow could implement State Question 788, and when it tried to implement it, Cloudi Mornings attempted to thwart the City's efforts with a declaratory judgment.

¶23 However, the Legislature did clarify the legislation with amendments and Cloudi Mornings declaratory judgment arguments were essentially nullified by the Legislative amendments. Because the declaratory relief Cloudi Mornings sought is no longer an issue, Cloudi Mornings has yet to appeared to suffer any loss, and it appears the City was acting within its authority under both the original enactment and its amendments, we must dismiss the appeal.

APPEAL DISMISSED. 

GURICH, C.J., DARBY, V.C.J., KAUGER, WINCHESTER, EDMONDSON, COLBERT, COMBS, KANE, JJ., concur.

FOOTNOTES

[1] On December 10, 2018, applicants Sooner Green, L.L.C. and Heather Whitsell and The Oklahoma Municipal League filed an application to file an Amicus Curiae Brief without consent by the parties. On December 12, 2018, we deferred consideration of the motion to the decisional stage. Because of our holding, an amicus curiae brief is unnecessary and the applications are hereby denied.

[2] Title 63 O.S. Supp. 2018 §420 as enacted provided:

A. A person in possession of a state issued medical marijuana license shall be able to:

1. Consume marijuana legally;

2. Legally possess up to three (3) ounces of marijuana on their person;

3. Legally possess six (6) mature marijuana plants;

4. Legally possess six (6) seedling plants;

5. Legally possess one (1) ounce of concentrated marijuana;

6. Legally possess seventy-two (72) ounces of edible marijuana; and

7. Legally possess up to eight (8) ounces of marijuana in their residence.

B. Possession of up to one and one-half (1.5) ounces of marijuana by persons who can state a medical condition, but not in possession of a state issued medical marijuana license, shall constitute a misdemeanor offense with a fine not to exceed Four Hundred Dollars ($400.00).

C. A regulatory office shall be established under the Oklahoma State Department of Health which will receive applications for medical license recipients, dispensaries, growers, and packagers within sixty (60) days of the passage of this initiative.

D. The Oklahoma State Department of Health shall within thirty (30) days of passage of this initiative, make available, on their website, in an easy to find location, an application for a medical marijuana license. The license will be good for two (2) years, and the application fee will be One Hundred Dollars ($100.00), or Twenty Dollars ($20.00) for individuals on Medicaid, Medicare, or SoonerCare. The methods of payment will be provided on the website.

E. A temporary license application will also be available on the Oklahoma Department of Health website. A temporary medical marijuana license will be granted to any medical marijuana license holder from other states, provided that the state has a state regulated medical marijuana program, and the applicant can prove they are a member of such. Temporary licenses will be issued for thirty (30) days. The cost for a temporary license shall be One Hundred Dollars ($100.00) Renewal will be granted with resubmission of a new application. No additional criteria will be required.

F. Medical marijuana license applicants will submit their application to the Oklahoma State Department of Health for approval and that the applicant must be an Oklahoma state resident and shall prove residency by a valid driver's license, utility bills, or other accepted methods.

G. The Oklahoma State Department of Health shall review the medical marijuana application, approve/reject the application, and mail the applicant's approval or rejection letter (stating reasons for rejection) to the applicant within fourteen (14) days of receipt of the application. Approved applicants will be issued a medical marijuana license which will act as proof of their approved status. Applications may only be rejected based on applicant not meeting stated criteria or improper completion of the application.

H. The Oklahoma State Department of Health will only keep the following records for each approved medical license:

1. a digital photograph of the license holder;

2. the expiration date of the license;

3. the county where the card was issued; and

4. a unique 24 character identification number assigned to the license.

I. The Department of Health will make available, both on its website, and through a telephone verification system, an easy method to validate a medical license holders authenticity by the unique 24 character identifier.

J. The State Department of Health will ensure that all application records and information are sealed to protect the privacy of medical license applicants.

K. A caregiver license will be made available for qualified caregivers of a medical marijuana license holder who is homebound. The caregiver license will give the caregiver the same rights as the medical license holder. Applicants for a caregiver license will submit proof of the medical marijuana license holder's license status and homebound status, that they are the designee of the medical marijuana license holder, must submit proof that the caregiver is age eighteen (18) or older, and must submit proof the caregiver is an Oklahoma resident. This will be the only criteria for a caregiver license.

L. All applicants must be eighteen (18) years or older. A special exception will be granted to an applicant under the age of eighteen (18), however these applications must be signed by two (2) physicians and the applicant's parent or legal guardian.

M. All applications for a medical license must be signed by an Oklahoma Board certified physician. There are no qualifying conditions. A medical marijuana license must be recommended according to the accepted standards a reasonable and prudent physician would follow when recommending or approving any medication. No physician may be unduly stigmatized or harassed for signing a medical marijuana license application.

N. Counties and cities may enact medical marijuana guidelines allowing medical marijuana license holders or caregivers to exceed the state limits set forth in subsection A of this section.

[3] Title 63 O.S. Supp. 2018 §421.

[4] Title 63 O.S. Supp. 2018 §422.

[5] Title 63 O.S. Supp. 2018 §423.

[6] Title 63 O.S. Supp. 2018 §424.

[7] Title 63 O.S. Supp. 2018 §420, see note 2, supra.

[8] Title 63 O.S. Supp. 2018 §420, see note 2, supra.

[9] Title 63 O.S. Supp. 2018 §425.

[10] Title 63 O.S. Supp. 2018 §425(F) provided:

No city or local municipality may unduly change or restrict zoning laws to prevent the opening of a retail marijuana establishment.

[11] The rules were made effective August 25, 2018, or when approved by the Governor, whichever is later. The Governor approved the rules on July 11, 2018.

[12] Cloudi Mornings attached the Ordinances and the Manual of Fees to its Petition for Declaratory Judgment, but the attachments are unsigned, unfiled copies.

[13] Title 63 O.S. Supp. 2018 §425(F), see note 10, supra.

[14] Title 63 O.S. Supp. 2019 §420.

[15] On October 22, 2019, the Tulsa County Court Clerk filed an official, certified supplement to the record which included the trial court's findings.

[16] Title 11 O.S. 2011 §43-101 provides:

For the purpose of promoting health, safety, morals, or the general welfare of the community, a municipal governing body may regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes.

Nuchools v. Board of Adjustment of the City of Tulsa, 1977 OK 3, ¶11, 560 P.2d 556 [The right, power, and authority of the legislative body of cities to enact zoning ordinances arises from the authority of the Oklahoma statutes.]; See also Mid-Continent Life Insurance v. The City of Oklahoma City, 1985 OK 41 ¶9, 701 P.2d421 [Zoning is a legislative function which is due the presumptive validity of any municipal ordinances. Unless zoning decisions of a municipality are found not to have a substantial relation to public health, safety, morals or general welfare or are found to constitute an unreasonable, arbitrary exercise of police power, such judgments will not be overridden by courts.].

[17] Title 63 O.S. Supp. 2018 §420, see note 2, supra.

[18] Title 63 O.S. Supp. 2019 §425, see also discussion page 9, supra.

[19] Quail Creek Golf v. Oklahoma Tax Commission, 1996 OK 35, ¶10, 913 P.2d 302; See, Texas County Irrigation & Water Resources Ass'n v. Oklahoma Water Resources Board, 1990 OK 121, ¶6, 803 P.2d 1119; See also, Board of Education v. Morris, 1982 OK 142, ¶9, 656 P.2d 258; Magnolia Pipe Line Co., v. Oklahoma Tax Commission, 1946 OK 113, ¶11, 167 P.2d 884.

[20] Quail Creek Golf v. Oklahoma Tax Commission, see note 20, supra; Texas County Irrigation & Water Resources Ass'n v. Oklahoma Water Resources Board, see note 20, supra; Magnolia Pipe Line Co., v. Oklahoma Tax Commission, see note 20, supra.

[21] Quail Creek Golf v. Oklahoma Tax Commission, see note 20, supra; Texas County Irrigation & Water Resources Ass'n v. Oklahoma Water Resources Board, see note 20, supra; Magnolia Pipe Line Co., v. Oklahoma Tax Commission, see note 20, supra. See also, Polymer Fabricating, Inc. v. Employers Worker's Compensation Association,1998 OK 113, ¶15, 980 P.2d 108; Board of Education, Vici Public Schools, v. Morris, 1982 OK 142, ¶9, 688 P.2d 258.

[22] Title 12 O.S. 2011 §1651 provides:

District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of any foreign judgment or decree, deed, contract, trust, or other instrument or agreement or of any statute, municipal ordinance, or other governmental regulation, whether or not other relief is or could be claimed, except that no declaration shall be made concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after judgment or for compensation alleged to be due under workers' compensation laws for injuries to persons. The determination may be made either before or after there has been a breach of any legal duty or obligation, and it may be either affirmative or negative in form and effect; provided however, that a court may refuse to make a determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding.

Knight v. Miller, 2008 OK 81, ¶¶8-13, 195 P.3d 372; Gordon v. Followell, 1964 OK 74, ¶6, 391 P.2d 242.

[23] Westinghouse Elec. Corp. v. Grand River Dam Authority, 1986 OK 20, ¶21, 720 P.2d 713.

[24] Hunsucker v. Fallin, 2017 OK 100, ¶5, 408 P.3d 599 [This Court possesses discretion to grant standing to private parties to vindicate the public interest in cases presenting issues of great public importance. This discretion is properly exercised to grant standing where there are "competing policy considerations" and "lively conflict between antagonistic demands."]; Osage Nation v. Bd. of Comm'rs, 2017 OK 34, ¶61, 394 P.3d 1224 [ We have recently explained standing must be predicated on cognizable economic harm when a legislative act is challenged as unconstitutional or invalid. A person who seeks to invalidate a statute as unconstitutional must establish standing by showing that the legislation sought to be invalidated detrimentally affects his/her interest in a direct, immediate and substantial manner. Similarly, in some states, standing based upon public nuisance and municipal zoning law is based upon an allegation of injury to the plaintiff which is different in kind from that experienced by the residents in general. Standing to challenge the ordinance itself apart from the construction requires a different analysis, but also must be based upon a legally cognizable interest infringed by the challenged legislation (ordinance)]. Even the Amicus Curie applicants acknowledge in their application that "as framed the issues(s) pending before this Court does not address whether a municipality with its regulatory powers can outright ban or prohibit lawful activity approved by a vote of the citizens of the State of Oklahoma."

[25] A comparable situation might be Knight v. Miller, 2008 OK 81, ¶11, 195 P.3d 372 wherein the injured party was merely seeking a declaration that the insurer would be obligated to pay any judgment that he might recover against the tortfeasor. The Court held that the injured party had no legally cognizable or protective interest in the controversy and would not have one unless and until he succeeded in the negligence action.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 121, 803 P.2d 1119, 61 OBJ 3027, Texas County Irr. and Water Resources Ass'n v. Oklahoma Water Resources Bd.
Discussed
 1946 OK 113, 167 P.2d 884, 196 Okla. 633, MAGNOLIA PIPE LINE CO. v. OKLAHOMA TAX COMM'N
Discussed
 1964 OK 74, 391 P.2d 242, GORDON v. FOLLOWELL
Discussed
 1996 OK 35, 913 P.2d 302, 67 OBJ 869, Quail Creek Golf v. Okl. Tax Comm.
Discussed
 2008 OK 81, 195 P.3d 372, KNIGHT v. MILLER
Discussed at Length
 1977 OK 3, 560 P.2d 556, NUCHOLLS v. BOARD OF ADJUSTMENT OF CITY OF TULSA
Discussed
 2017 OK 34, 394 P.3d 1224, OSAGE NATION v. BD. OF COMMISSIONERS OF OSAGE COUNTY and OSAGE NATION v. OSAGE COUNTY BD. OF ADJUSTMENT
Discussed
 2017 OK 100, 408 P.3d 599, HUNSUCKER v. FALLIN
Discussed
 1982 OK 142, 656 P.2d 258, Board of Educ., Vici Public Schools, Independent School Dist. No. I-5, Dewey County v. Morris
Discussed at Length
 1998 OK 113, 980 P.2d 109, 69 OBJ 4068, Polymer Fabricating, Inc. v. Employers Workers' Compensation Association
Cited
 1985 OK 41, 701 P.2d 412, Mid-Continent Life Ins. Co. v. City of Oklahoma City
Cited
 1986 OK 20, 720 P.2d 713, 57 OBJ 1155, Westinghouse Elec. Corp. v. Grand River Dam Authority
Discussed
Title 11. Cities and Towns
 Cite
Name
Level

 11 O.S. 43-101, General Powers of Municipalities
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 420, License - Application - Records - Requirements - Caregiver License - Counties and Cities
Discussed at Length
 63 O.S. 421, Dispensary License - Application - Criteria - Report - Penalties
Cited
 63 O.S. 422, Commercial Grower License - Application - Criteria - Sales - Report - Penalties
Cited
 63 O.S. 423, Processing License - Application - Criteria - Standards - Inspection - Sales - Report - Paraphernalia
Cited
 63 O.S. 424, Transportation License - Labeling
Cited
 63 O.S. 425, License Holder Protection - Non-Discrimination - Authorized Use - Zoning - Location - Research License
Discussed at Length
 63 O.S. 427, Licensure Revocation - Revocation Hearings - Availability of Licensee Information
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA