OSCN Found Document:Question Submitted by: The Honorable David R. Thomas, District Attorney, District 3

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: The Honorable David R. Thomas, District Attorney, District 3
2023 OK AG 7
Decided: 05/18/2023
Oklahoma Attorney General Opinions

Cite as: 2023 OK AG 7, __ __

 
¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Is a municipal zoning ordinance that prohibits or restricts the sale of goods out of the home in areas zoned solely for residential use preempted with respect to the sale of firearms by title 21, section 1289.24 of the Oklahoma Statutes?
I.
BACKGROUND
A. Municipal Zoning Authority.
¶1 "Cities generally have the authority to enact zoning and regulatory ordinances." Cloudi Mornings, LLC v. City of Broken Arrow, 2019 OK 75, ¶ 17, 454 P.3d 753, 758. Placing restrictions on the use of property, "when proper and reasonable, is an authorized exercise of police power, delegated to municipalities by statute specifically clothing municipalities with the power to zone by legislative enactment." Cauvel v. City of Tulsa, 1962 OK 23, ¶ 9, 368 P.2d 660, 661. The statutory authority for municipal zoning derives from the Oklahoma Municipal Code, which provides, in relevant part, as follows:
For the purpose of promoting health, safety, morals, or the general welfare of the community, a municipal governing body may regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes.
11 O.S.2021, § 43-101.
¶2 For municipalities that have adopted a charter as their governing law,[1] zoning authority may derive from the charter instead of statute. See, e.g., Homeowners For Fair Zoning v. City of Tulsa, 2005 OK CIV APP 90, ¶¶ 6--7, 123 P.3d 67, 69.[2] In general, the validity of a zoning ordinance is measured by whether it is "an arbitrary, unreasonable and capricious exercise of the [municipal] police power." McNair v. City of Oklahoma City, 1971 OK 134, ¶ 12, 490 P.2d 1364, 1367. If the validity of the restriction "is 'fairly debatable,' [the municipality's] legislative judgment must be allowed to control." Id. ¶ 11, 490 P.2d at 1367, 1368 (citations omitted).
¶3 From the information provided with your request, we understand that the City of Altus has adopted a set of zoning ordinances known as the Uniform Development Code ("UDC").[3] For the purposes of this opinion, we need not examine the UDC at length. Nor does this opinion interpret the meaning or effect of any particular provision of the UDC. See 2006 OK AG 31, ¶ 14 ("[D]etailed analysis of particular municipal ordinances is not a proper subject for an Attorney General's Opinion."). Rather, it is sufficient to note that in adopting the UDC the City of Altus designated certain areas within the city as residential and, in those areas, selling merchandise out of the home is either restricted or prohibited altogether.
B. The Regulation of Firearms and State Preemption.
¶4 Originally enacted in 1985, title 21, section 1289.24 of the Oklahoma Statutes broadly declares that state law preempts local regulations with regard to firearms, knives, ammunition, and certain related products. In its current form, section 1289.24 provides, in relevant part, as follows:
The State Legislature hereby occupies and preempts the entire field of legislation in this state touching in any way firearms, air powered pistols, air powered rifles, knives, components, ammunition and supplies to the complete exclusion of any order, ordinance, or regulation by any municipality or other political subdivision of this state. Any existing or future orders, ordinances, or regulations in this field, except as provided for in paragraph 2 of this subsection and subsection C of this section, are null and void.
21 O.S.2021, § 1289.24(A)(1). The statute also prohibits municipalities from "adopt[ing] any order, ordinance or regulation concerning in any way the sale, purchase, purchase delay, transfer, ownership, use, keeping, possession, carrying, bearing, transportation, licensing, permit, registration, taxation other than sales and compensating use taxes or other controls on firearms, knives, components, ammunition and supplies." Id. § 1289.24(B).[4] If a person's "rights pursuant to the protection of the preemption provisions of this section have been violated," the person may "bring a civil action against the persons, municipality, and political subdivision jointly and severally for injunctive relief or monetary damages or both." Id. § 1289.24(D).
¶5 Your question, in essence, is this: What effect does the broad preemption language of section 1289.24 have on a generally-applicable municipal zoning ordinance that prohibits or restricts the sale of any merchandise--including firearms--out of a home located in a residential area?
II.
DISCUSSION
¶6 The doctrine of preemption is most commonly encountered in cases of perceived conflict between state and federal law. The Oklahoma Supreme Court has recognized three varieties of preemption: express preemption, field preemption, and conflict preemption. See In re State Question No. 807, Initiative Petition No. 423, 2020 OK 57, ¶ 17, 468 P.3d 383, 389 (citing Murphy v. National Collegiate Athletic Ass'n, 138 S.Ct. 1461, 1480 (2018)). As the Court explained:
Express preemption occurs when a federal statute includes a provision stating that it displaces state law and defining the extent to which state law is preempted. Field preemption occurs when Congress expresses an intent to occupy an entire field, such that even complementary state regulation in the same area is foreclosed. Finally, conflict preemption occurs when there is an actual conflict between state and federal law. 
Id. (citations omitted).[5] In general, these principles translate to the regulatory relationship between the State and its political subdivisions as well. See 7-Eleven, Inc. v. McClain, 1967 OK 7, ¶¶ 12--23, 422 P.2d 455, 457--59; see also 5 MCQUILLIN, LAW OF MUNICIPAL CORPORATIONS § 15:19 (3d ed. Aug. 2020 update) ("The preemption doctrine flows from the principle that municipal legislation is invalid if it is repugnant to, or inconsistent with, State law."), Paul Diller, Intrastate Preemption, 87 B.U. L. REV. 1113, 1114--16 (Dec. 2007).
¶7 In the case of section 1289.24, the Legislature was explicit in its intent to "occup[y] and preempt[] the entire field of legislation in this state touching in any way firearms, air powered pistols, air powered rifles, knives, components, ammunition and supplies to the complete exclusion of any order, ordinance or regulation by any municipality or other political subdivision of this state." 21 O.S.2021, § 1289.24(A)(1). The question is whether this broadly-stated intent can reasonably be read to preempt municipal zoning restrictions that apply equally to all merchandise sales out of homes located in residential areas. See Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) (Legislative intent is "the ultimate touchstone in every pre-emption case[]" (internal quotations omitted)).
¶8 This question does not appear to have been addressed by Oklahoma courts, but similar questions have arisen elsewhere. For example, when a legislative body has expressed its intent to occupy an entire regulatory field, but a local ordinance limits where in a city participants in that field may operate, authorities in other states have reached differing conclusions as to whether the local regulation is preempted. In Peter Garrett Gunsmith, Inc. v. City of Dayton, 98 S.W.3d 517 (Ky. Ct. App. 2002), an ordinance permitted gun shops only in certain zoning districts, which limited the options for a gunsmith planning to open new business locations. The gunsmith claimed the ordinances were preempted by a state statute that--like section 1289.24--prohibited localities from "occupy[ing] any part of the field of regulation of the transfer, ownership, possession, carrying or transportation of firearms, ammunition, or components of firearms or combination thereof." Id. at 519. But the court held the ordinance was not preempted because it did not "represent regulations in the field of firearm regulation[,]" but rather "regulations in the field of land use, a field of regulation that cities have authority to control." Id. at 520.[6] By contrast, in Dallas Merch's and Concessionaire's Ass'n v. City of Dallas, 852 S.W.2d 489 (Tex. 1993), the Texas Supreme Court reached the opposite conclusion when considering whether an ordinance that prohibited bars and liquor stores within 300 feet of residentially-zoned areas was preempted by the state's alcoholic beverage code. Focusing in part on the legislature's declared intent that "this code shall exclusively govern the regulation of alcoholic beverages in this state," the Court held that the statute, with limited exceptions, "clearly preempts an ordinance . . . that regulates where alcoholic beverages are sold[.]" Id. at 491--92.
¶9 At this point, it is important to note a clear distinction between the preemption question in the above cases, and the one presented here. Specifically, the state statutes and local ordinances at issue in these cases were at least arguably regulating the same subject matter: the sale of firearms in Peter Garrett Gunsmith and the sale of alcohol in Dallas Merchant's. That is not the case with respect to section 1289.24 and the UDC ordinance, which restricts home-based sales of any merchandise in residential areas. In similar situations, authorities from other states have been relatively consistent in concluding that when a local ordinance regulating a certain subject matter incidentally bumps up against a field occupied by the State, the ordinance is not preempted. As an illustrative example, in Frew Run Gravel Prods., Inc. v. Town of Carroll, 518 N.E.2d 920 (N.Y. 1987), a property owner obtained a state permit to conduct a sand and gravel operation on its property, but the property was located in a zoning district that prohibited that use. The property owner sued, claiming the State's Mined Land Reclamation Law, which expressly "supercede[d] all 'local laws relating to the extractive mining industry,'" preempted the zoning ordinance. Id. at 922. The court disagreed, holding as follows:
The zoning ordinance relates not to the extractive mining industry but to an entirely different subject matter and purpose: i.e., "regulating the location, construction and use of buildings, structures, and the use of land . . . and for said purposes dividing the Town into districts[.]" The purpose of a municipal zoning ordinance in dividing a governmental area into districts and establishing uses to be permitted within the districts is to regulate land use generally. In this general regulation of land use, the zoning ordinance inevitably exerts an incidental control over any of the particular uses or businesses which, like sand and gravel operations, may be allowed in some districts but not in others. But, this incidental control resulting from the municipality's exercise of its right to regulate land use through zoning is not the type of regulatory enactment relating to the "extractive mining industry" which the Legislature could have envisioned as being within the prohibition of the statute[.]
Id.
¶10 In three instances, Attorneys General in other states have reached similar conclusions. First, in 2003 the Texas Attorney General was asked whether a city ordinance that banned the sale of glass beverage containers was preempted as to alcoholic beverages by the state's Alcoholic Beverage Code, which provided that "the manufacture, sale, distribution, transportation, and possession of alcoholic beverages shall be governed exclusively by the provisions of this code." See Tex. Att'y. Gen. Op. GA-0110, 2003 WL 22433838, at *2 (Oct. 3, 2003). The Attorney General opined that because the ordinance applied to all beverages, without singling out alcoholic beverages for regulation, it was not preempted. Id. at *3. Second, in 2012, the Michigan Attorney General addressed the preemptive reach of the Michigan Fireworks Safety Act, which prohibited localities from "enact[ing] or enforc[ing] an ordinance, code, or regulation pertaining to or in any manner regulating the sale, display, storage, transportation, or distribution of fireworks regulated under this act." 2012 Mich. OAG No. 7266, 2012 WL 3544657, at *2 (June 12, 2012). The specific question was whether the Act preempted a local ordinance that "allows vendors to sell goods using tents or other temporary structures in the township but requires that they obtain a permit, allow for inspections by the township fire department, and pay a fee." Id. at *1. The Attorney General concluded that the ordinance was not preempted as to the sale of fireworks:
The Act specifically regulates the sale of consumer fireworks from permanent and nonpermanent locations like tents and other similar temporary facilities. In contrast, the township ordinance is a law of general applicability that regulates the use of all tents, canopies, or similar shelters used for vending activities. It does not expressly refer to the sale of fireworks or any other specific goods and services. Nevertheless, a vendor seeking to sell consumer fireworks in the township would be subject to the vendor permit and fee requirements. Thus, the township ordinance will incidentally affect the sale of regulated fireworks in the township.
But this incidental effect does not equate to the regulation of "the sale, display, storage, transportation, or distribution of fireworks regulated" by the Act. Rather, the purpose of a general vendor ordinance like the one at issue here is to regulate the sale of goods or services to the community by temporary vendors.
Id. at *3 (citations omitted).
¶11 Third, in 2017, the Attorney General of Tennessee addressed a question most analogous to the one you pose. See Tenn. Op. Att'y. Gen. No. 17-26, 2017 WL 1423429 (Apr. 11, 2017). The statute at issue provided, subject to certain exceptions, as follows:
[T]he general assembly preempts the whole field of the regulation of firearms, ammunition, or combinations thereof including but not limited to, the use, purchase, transfer, taxation, manufacture, ownership, possession, carrying, sale, acquisition, gift, devise, licensing, registration, storage and transportation thereof, to the exclusion of all city, town, municipality, or metropolitan government law, ordinances, resolutions, enactment or regulation. No city, town, municipality or metropolitan government nor any local agency, department or official shall occupy any part of the field regulation of firearms, ammunition or components of firearms or ammunition or combinations thereof.
Id. at *1. Meanwhile, a local ordinance prohibited manufacturing of any kind in areas that were zoned residential. This raised the question of whether the ordinance would be preempted as to the manufacture of firearms and ammunition. The Attorney General explained that the statute and the ordinance regulated different fields: the statute "regulate[d] all things related to firearms and ammunition," while the ordinance "regulate[d] the use of land," and "[t]here is nothing in the statute to suggest the Legislature intended to divest a local government of its authority to regulate land use." Id. at *2. 
¶12 Turning back to the interaction between section 1289.24 and the UDC ordinance, the reasoning in these authorities is persuasive. By virtue of section 1289.24, state law "occupies and preempts the entire field of legislation in this state touching in any way firearms, air powered pistols, air powered rifles, knives, components, ammunition and supplies to the complete exclusion of any order, ordinance or regulation by any municipality or other political subdivision of this state." 21 O.S.2021, § 1289.24(A)(1) (emphasis added). Accordingly, local "orders, ordinances, or regulations in this field," are invalid unless specifically exempted. Id. (emphasis added). But the Altus zoning ordinance does not deal with firearms or weapons at all. Rather, it appears to be a run-of-the-mill zoning regulation that places similar restrictions on all merchandise sales activities within certain zoning districts of the city. It does not specifically address the sale of firearms, knives, and the related goods listed in section 1289.24, nor does it have the effect of singling out those products for disparate treatment. The ordinance intersects with section 1289.24 only because the items listed in section 1289.24 are capable of being sold from the home. Based on the reasoning outlined above, this is simply not enough to draw the zoning ordinance into the "field of legislation" identified in section 1289.24 such that the ordinance is preempted and rendered null and void.[7]
¶13 Were we to reach the opposite conclusion, the results border on the absurd. For example, the City of Altus has adopted generally-applicable building and fire codes that govern the safety of buildings and other structures in the city. See City of Altus Mun. Code, §§ 8-209, 18-90, https://library.municode.com/ok/altus/codes/code_of_ordinances?nodeId=PTIICOOR_CH8BUCO_ARTIVCOCOADLORE_DIV1GE_S8-209COADRE, and https://library.municode.com/ ok/altus/codes/code_of_ordinances?nodeId=PTIICOOR_CH18FIPRPRCO_ARTIIIFIPRRE_S18-90FICOAD (last visited May 18 2022). Would the city be unable to enforce its building and fire codes with respect to buildings that house firearm retailers? The City also requires those who engage in door-to-door sales in residential areas to first obtain a transient merchant license. City of Altus Mun. Code, §§ 10-274--10-276, https://library.municode.com/ok/ altus/codes/code_of_ordinances?nodeId=PTIICOOR_CH10BUOCPR_ARTVIITRME (last visited May 18, 2023). Would section 1289.24 preempt that requirement as applied to a door-to-door knife salesman? Notwithstanding the broad language of section 1289.24, we find it unlikely that the Legislature intended this provision to reach so far into municipal affairs. See Medtronic, 518 U.S. at 485 (Legislative intent is "'the ultimate touchstone' in every pre-emption case."), Rogers v. Quicktrip, 2010 OK 3, ¶ 11, 230 P.3d 853, 859 ("an absurd result cannot be presumed to have been intended by the drafters.").
¶14 It is, therefore, the official Opinion of the Attorney General that: 

A generally-applicable municipal zoning ordinance that prohibits the sale of any goods out of the home in areas zoned solely for residential use is not preempted with respect to the sale of firearms by title 21, section 1289.24 of the Oklahoma Statutes. Such an ordinance regulates land use, while title 21, section 1289.24 preempts local regulations in the field of "firearms, air powered pistols, air powered rifles, knives, components, ammunition and supplies . . . ."

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
ETHAN SHANER
DEPUTY ATTORNEY GENERAL
FOOTNOTES
[1] In Oklahoma, a municipality of over 2,000 residents may "frame a charter for its own government, consistent with and subject to the Constitution and laws of this State[.]" Okla. Const. art. XVIII, § 3(a). Charter cities are "accorded full power of local self-government, and as such the city has the power to enact and enforce ordinances to protect the public peace, order, health, morals and safety of its inhabitants even though general statutes exist relating to the same subjects." Moore v. City of Tulsa, 1977 OK 43, ¶ 2, 561 P.2d 961, 963. When a charter is properly adopted and approved, it becomes the governing law of the municipality and controls over state law in all matters "relating to purely municipal concerns[.]" 11 O.S.2021, § 1-102(1).
[2] Some municipal charters simply reserve to the municipality the statutory and constitutional powers granted to all Oklahoma municipalities, without specific reference to zoning powers. See, e.g., City of Moore v. Atchison, Topeka, & Santa Fe Ry., 699 F.2d 507, 510 (10th Cir. 1983). In that case, municipal zoning power stems from statute, notwithstanding the fact that it is exercised by a charter municipality. Id. at 510--11 (citing Development Indus., Inc. v. City of Norman, 1966 OK 59, 412 P.2d 953).
[3] See City of Altus Mun. Code, ch. 46, https://library.municode.com/ok/altus/codes/code_of_ordinances?nodeId=PTIICOOR_CH46ZODE (last visited May 18, 2023). Chapter 46 of the Altus municipal code does not set forth substantive zoning provisions, but rather incorporates by reference the version of the UDC adopted by the city. That version can be found at https://www.altusok.gov/DocumentCenter/View/103/Unified-Development-Code-PDF (last visited May 18, 2023).
[4] While these broad preemptive provisions are subject to limited exceptions, the exceptions are not relevant to your question. See 21 O.S.2021, §§ 1289.24(A)(2), (C).
[5] The latter two categories--field preemption and conflict preemption--are typically invoked as a type of implied preemption. See, e.g., Choate v. Champion Home Builders Co., 222 F.3d 788, 792 (10th Cir. 2000). However, this three-category formulation "should not be taken to mean that [the categories] are rigidly distinct." English v. General Elec. Co., 496 U.S. 72, 79 n.5 (1990). "Indeed, field pre-emption may be understood as a species of conflict pre-emption: A state law that falls within a pre-empted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulation." Id.
[6] Addressing a nearly identical question, the Virginia Attorney General in a recent opinion relied in part on the reasoning in Peter Garrett Gunsmith. See Va. Att'y. Gen. Op. 18-069, 2019 WL 4134304, at *2 (Aug. 23, 2019)
(By its express terms, [the statute] prohibits only those ordinances that govern "the purchase, possession, transfer, ownership, carrying, storage or transporting of firearms, ammunition, or components or combination thereof." While this language targets specific activities relating to firearms, it does not restrict a locality's authority to control the location of a firearm sales establishment through zoning."). 
In Kansas, however, the Attorney General opined that a local zoning regulation that excluded the sale of firearms or ammunition from "permitted home occupations" was preempted by such a statute. Kan. Att'y. Gen. Op. 2012-2, 2012 WL 175163 (Jan. 19, 2012). The Attorney General found it "clear that the legislature intended to . . . preempt local laws governing the purchase, transfer, ownership, storage or transporting of firearms or ammunition." Id. at *2. Based on this intent, the Attorney General concluded that "[a] zoning regulation that prohibits the sale of firearms at a particular location (i.e., online sales conducted at one's home) clearly purports to govern the purchase and transfer of firearms." Id.
[7] This opinion does not address the question of whether section 1289.24 would preempt a local ordinance that is more clearly directed at firearms, like those addressed in Peter Garrett Gunsmith and in the opinions issued by the Attorneys General of Virginia and Kansas as described in note 6 supra. But given the breadth of language the Legislature used in section 1289.24, it is likely that any such ordinance would be preempted.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
2006 OK AG 31, 
Question Submitted by: The Honorable Jim Wilson, State Senator, District 3
Cited

Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2005 OK CIV APP 90, 123 P.3d 67, 
HOMEOWNERS FOR FAIR ZONING v. CITY OF TULSA
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1962 OK 23, 368 P.2d 660, 
CAUVEL v. CITY OF TULSA
Discussed

 
1966 OK 59, 412 P.2d 953, 
DEVELOPMENT INDUSTRIES, INC. v. CITY OF NORMAN
Discussed

 
1967 OK 7, 422 P.2d 455, 
7-ELEVEN, INCORPORATED v. McCLAIN
Discussed

 
1971 OK 134, 490 P.2d 1364, 
McNAIR v. CITY OF OKLAHOMA CITY
Discussed

 
2010 OK 3, 230 P.3d 853, 
ROGERS v. QUIKTRIP CORP.
Discussed

 
1977 OK 43, 561 P.2d 961, 
MOORE v. CITY OF TULSA
Discussed

 
2019 OK 75, 454 P.3d 753, 
CLOUDI MORNINGS, LLC. v. CITY OF BROKEN ARROW
Discussed

 
2020 OK 57, 468 P.3d 383, 
IN RE: STATE QUESTION No. 807, INITIATIVE PETITION No. 423
Discussed

Title 11. Cities and Towns

 
Cite
Name
Level

 
11 O.S. 1-102, 
Definitions
Cited

 
11 O.S. 43-101, 
General Powers of Municipalities
Cited

Title 21. Crimes and Punishments

 
Cite
Name
Level

 
21 O.S. 1289.24, 
Firearm Regulation - State Preemption
Discussed at Length