OSCN Found Document:SCOTT v. FOSTER

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 SCOTT v. FOSTER
2023 OK 112
Case Number: 118267
Decided: 11/14/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2023 OK 112, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

Derrick R. Scott, Petitioner/Appellant,
v.
Candice J. Foster, Respondent/Appellee.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION II

¶0 Petitioner, Derrick R. Scott, filed a petition to establish paternity. Respondent, Mother, Candice J. Foster filed a motion to dismiss, asserting that title 10, section 7700-609(B) requires a party to commence an adjudication of paternity within two years of an acknowledgment of paternity. The Blaine County District Court granted Mother's motion to dismiss and ordered Petitioner to pay substantial attorney fees. Petitioner appealed and the Court of Civil Appeals affirmed in part and reversed in part, overturning the district court's order regarding attorney fees. This Court previously granted certiorari to address whether the Court of Civil Appeals properly affirmed the district court in dismissing Petitioner's claim. We answer now in the negative.

COURT OF CIVIL APPEALS OPINION VACATED IN PART,
DISTRICT COURT REVERSED, AND
CASE REMANDED FOR FURTHER PROCEEDINGS.

Eric N. Edwards, Eric N. Edwards, P.C., Enid, Oklahoma, for Petitioner/Appellant, Derrick R. Scott.

Maria Tully Erbar, Oklahoma City, Oklahoma, for Respondent/Appellee, Candice J. Foster.

OPINION

DARBY, J.,

¶1 The question before this Court is whether the Court of Civil Appeals properly affirmed the district court in dismissing Derrick R. Scott's petition. We answer in the negative. Neither party requested certiorari review on the issue of attorney fees, so that portion of the opinion remains intact.[1]

I. BACKGROUND AND PROCEDURAL HISTORY

¶2 Scott and Candice J. Foster, Mother, had a physical relationship at an unspecified time. Following which, in February 2013, Mother gave birth to Child. At that time, Mother was not married. Eight days after Child's birth, the acknowledged father[2] signed an Acknowledgment of Paternity. According to the Acknowledgment of Paternity, no genetic testing was done at that time to determine paternity.

¶3 This case began on January 10, 2019, when Scott filed a petition requesting an adjudication of paternity over Child. On February 19, 2019, Mother filed an Answer and Motion to Dismiss Or Alternatively, Motion for Summary Judgment.

¶4 Mother denied that Scott is Child's father. Mother noted that Child has an acknowledged father[3] and asserted that Scott failed to state a claim upon which relief could be granted because Scott was statutorily barred from seeking an adjudication of paternity at the present time, pursuant to title 10, section 7700-609(B).[4] Mother argued that section 7700-609(B) required Scott to commence a paternity action within two years from the date of the acknowledgment of paternity and cited to Paul v. Williamson, 2014 OK CIV APP 31, 332 P.3d 1070, for finding a claim to be time-barred when filed more than two years after the acknowledgment of paternity. Mother also requested the court grant summary judgment based on her submitted evidentiary materials. Mother filed an Affidavit asserting that: (1) she is Child's mother, (2) Scott had never signed Child's birth certificate or an acknowledgment of paternity, (3) Child has an acknowledged father who had acknowledged paternity in March 2013, and (4) she was filing a Motion for a Protective Order under which she would later file a certified copy of the Acknowledgment of Paternity. On March 4, 2019, the trial court filed a court minute noting that the Acknowledgment of Paternity was filed under seal.[5] On March 6, 2019, DHS filed a disclaimer of interest in the proceeding, stating that DHS was not providing child support services to the benefit of Child in this case and would not be involved in the case.

¶5 In response, on March 6, 2019, Scott argued that Mother failed to verify her pleading and noted that Mother had failed to state under oath, in her affidavit, that Scott is not the biological father of the child. Scott stated that he was also incorporating the petition from another Blaine County case, CV 2018-59, in which Mother filed a Petition for Change of Name of Child on August 6, 2018; Scott noted that he did not receive notice of that proceeding, but that within the petition Mother stated

Petitioner and the minor child desire that the minor child's family name be changed to that of the family of the mother as requested above for the reason that father, [Acknowledged Father], provides no financial, temporal nor moral support for the child. He has had no personal contact or visitation with the child since February of 2013.

Scott argued that by way of this statement in the pleading, Mother recognized that the acknowledged father is not Child's biological father. Scott further asserted that he is Child's father and demanded a paternity test to confirm. Scott alleged that the acknowledged father was excluded as Child's father by genetic testing performed within two years of Child's birth and requested Mother or DHS must produce the results. Scott also alleged that Mother knew that Scott was Child's biological father and committed fraud when she signed the Acknowledgment of Paternity, naming another man as father. Scott further asserted that Mother informed him that the acknowledged father "was not the father and that he [Scott] was the only other man who could be the child's father." Pet. Resp. at 6. Scott requested discovery due to all the disputed questions of fact and requested appointment of a guardian ad litem. Scott did not attach any exhibits to his response.

¶6 Mother filed a motion to strike, wherein she requested the district court strike Scott's factual allegations regarding genetic testing and Mother's alleged acknowledgment to Scott that the acknowledged father is not Child's biological father. Scott responded at length that the motion was untenable and must be denied.

¶7 On May 9, 2019, Scott filed a supplemental response reasserting his request for a guardian ad litem and for the first time claiming that the Uniform Parental Act (UPA), as written and applied, clearly violates his 1st and 14th Amendment rights under the U.S. Constitution. Scott claimed that Mother's motion to dismiss seeks a de facto termination of his parental rights. For the first time, Scott also argued that he attempted to submit for genetic testing within the first two years of Child's life, but was denied because of the Acknowledgment of Paternity signed by another man. Scott argued that the DHS form for an Acknowledgment of Paternity allows an unwed mother to commit fraud by having a man other than the biological father sign it, thereby preventing the true biological father from signing an Acknowledgment. Scott also claimed that the UPA violated Child's rights because the UPA requires a paternity action to be filed within two years of birth, but title 12, section 95 allows married parents to file paternity and support actions until a child turns 18, with the child allowed to initiate legal proceedings even later under title 10, section 7700-606. He further argued the UPA discriminates against putative fathers as a mother may agree to testing at any time, but a biological father who is not a presumed father is barred from doing so after two years.

¶8 On June 7, 2019, Scott filed a notice to take Mother's deposition on June 25. On June 17, Mother filed a motion to quash the deposition subpoena. She noted that the statute of limitations had run and the hearing on the motion to dismiss was scheduled for June 21. Scott stated Mother was pleading the affirmative defense of the special statute of limitations under the UPA, contrary to title 12, section 95 (A)(8)-(9), and cited to numerous cases stating that a party who wrongfully conceals may not take advantage of their own wrong by pleading the statute of limitations and that questions of discovery of fraud are a question of fact for statute of limitations purposes. He argued that the UPA violated Equal Protection by applying a different statute of limitation to paternity cases arising out of wedlock.

¶9 On June 21, 2019, the district court held a hearing on the motion to dismiss. The judge almost immediately indicated

the issue looks to me like is title 10 section 7700-609(b), a statute of limitations or statute of repose. And I believe the law indicates it's a statute of repose and therefore there's no cause of action that exists, so the motion to dismiss is granted.

Tr. of Procs. 3:8-13 (June 21, 2019). Counsel for Scott requested to be heard and the following discourse took place:

Counsel: I intended to ask the Court for an order allowing this to be certified for immediate appeal.

Court: I- - I would take this as a final order, so I think you have an absolute right to appeal, Mr. Edwards.

Counsel: I just - - and this is with respect. I just want the record to be clear that we, as reflected in the court file, intended to present evidence in support of our motion as to the fraud claim. I don't believe with respect that the respondent briefed this is a statute of repose. That's the first, you know, indication in the case that I thought that issue was - - I think both of us argued the statute of limitations issue.

I certainly would have, you know, liked the opportunity to brief that. If the record goes up on accelerated appeal like a motion for summary judgment, you know, we're not going to have that issue fully briefed.

We - - we - - as we stated in our motions, the Court's read those, I'm not trying to argue with your ruling, but we did respectfully submit those. Because of the fraud issue, we should have been allowed to take the deposition of the respondent. Your ruling obviously prevents that from happening next week.

Court: Yes, sir.

Id., at 4:17-5:20. Counsel again spoke up to say:

Counsel: I just wanted the record to be clear that we - - we felt from a proffer standpoint that we could clearly prove a fraud cause of action and that the statute that the Court alluded to did specifically address areas where that affidavit of paternity can be set aside due to fraud. So I just want to make sure that we're not going to procedurally make a mistake as far as this being interlocutory or a final because - -

Court: I don't see how it could be interlocutory because from my perspective the case is over with this ruling.

Counsel: Just specifically because the Court feels that it's a statute of repose - -

Court: Correct.

Counsel: - - under the UPA - -

Court: Yes

Counsel: -- and not - - okay. Because I didn't see that in my cases that's why I'm - -

Court: Okay. Well, thank you. We'll be adjourned.

Id., at 6:25-7:22. The journal entry filed on August 23, 2019 states "that Title 10, Section 7700-609B is a statute of repose, and therefore no cause of action exists. Accordingly, the motion to dismiss filed by the Respondent should be granted."

¶10 Scott filed a petition in error on September 23, 2019 in which he stated the issues on appeal were whether the trial court erred in granting Mother's motion to dismiss, whether title 10, section 7700-609(B) is a statute of repose or statute of limitation subject to equitable tolling and other defenses, whether the Uniform Parentage Act, including section 7700-609(B) is unconstitutional on its face or as applied in this case, whether the trial court erred in failing to appoint a guardian ad litem, whether the district court's ruling deprived Scott or Mother of due process, whether the DHS forms for Acknowledgment of Paternity are unconstitutional under the First and Fourteenth Amendments to the United States Constitution, and whether the Acknowledgment of Paternity in this case is void or voidable under these facts. On January 8, 2020, the appeal was assigned to the Court of Civil Appeals, Division II. On February 6, 2020, Scott filed an amended petition in error wherein he added the issue of whether the district court erred in granting Mother's application for attorney fees and whether the amount awarded was excessive under the circumstances.

¶11 On April 21, 2020, Scott filed a Motion to Stay Appeal Pending Trial Court's Ruling on Petition to Vacate and For New Trial and to Supplement Record on Accelerated Appeal.[6] On June 10, 2020, the Court of Civil Appeals granted the stay and remanded the case for consideration of the motion to vacate.[7] On March 2, 2022, the Court of Civil Appeals lifted the stay filed in this case and stated the appeal would proceed.[8]

¶12 On June 16, 2022, the Court of Civil Appeals affirmed the district court in part and reversed the district court in part, overturning the district court's grant of attorney fees. The Court of Civil Appeals declared the first issue was whether the district court erred in granting Mother's motion to dismiss the paternity petition based on the trial court's reading of title 10, section 7700-609(B) as a statute of repose. The court then set out the statute and stated in full on this issue:

We join the district court and another division of this Court, see Paul v. Williamson, 2014 OK CIV APP 31, ¶ 8, 322 P.3d 1070, in interpreting this statute to cut off completely any ability of a putative father to seek a paternity adjudication more than two years after an AOP is signed, i.e., § 7700-609(B) is a statute of repose as opposed to a statute of limitations. See Reynolds v. Porter, 1988 OK 88, ¶¶ 6-7, 760 P.2d 816, 820 (explaining the difference between the two statute types). Because it is undisputed that Scott filed his petition in January 2019, nearly six years after the relevant AOP was signed, the trial court properly entered judgment.

COCA Op. 6 (emphasis original). The court next addressed Scott's arguments that section 7700-609(B) could be tolled and found no support for that argument. Finally, the court addressed Scott's constitutional challenges and found them also unsustainable.

¶13 On July 1, 2022, Scott filed a petition for rehearing.[9] The Court of Civil Appeals denied the petition for rehearing the same day. This Court granted Scott's petition for certiorari review regarding the portion of the opinion wherein the court affirmed the district court's dismissal.

II. STANDARD OF REVIEW

¶14 We review a district court's dismissal of an action under a de novo standard. Video Gaming Techs. v. Tulsa Cty. Bd. of Tax Roll Corrs., 2019 OK 84, ¶ 2, 455 P.3d 918, 919. "A petition can generally be dismissed only for absence of any cognizable legal theory to support the claim or for insufficient facts under a cognizable legal theory." Rogers v. Quiktrip Corp., 2010 OK 3, ¶ 4, 230 P.3d 853, 856. While the district court stated it granted the motion to dismiss, the court relied on Mother's submitted evidence, making the order one of summary judgment. Like dismissal, summary judgment settles only questions of law, therefore, we also review it de novo. Toch, LLC v. City of Tulsa, 2020 OK 81, ¶ 15, 474 P.3d 859, 865. If it appears that there is no substantial issue of material fact and that one party, including the non-moving party, is entitled to judgment as a matter of law, a court shall render judgment for that party and an appellate court will affirm. R. for Dist. Courts of Okla., 12 O.S.2011, ch. 2, app., R. 13(e); see also Fraternal Order of Police v. City of Norman, 2021 OK 20, ¶ 2, 489 P.3d 20, 22. If a party is not entitled to judgment as a matter of law, then summary judgment will be reversed. Toch, 2020 OK 81, ¶ 15, 474 P.3d, at 865. Under this standard, we confine our review to the limited, undisputed, material facts. Frey v. Independence Fire & Cas. Co., 1985 OK 25, ¶ 6, 698 P.2d 17, 20.

III. ANALYSIS

¶15 Based on the record before us, the dispositive legal question is whether title 10, section 7700-609(B) is a statute of repose or a statute of limitation subject to discovery, equitable tolling, or estoppel.[10] "[A] statute of limitation merely extinguishes the plaintiff's remedy while a statute of repose bars a cause of action before it arises." Reynolds v. Porter, 1988 OK 88, ¶ 6, 760 P.2d 816, 820. Or, "[i]n practical terms, a statute of repose marks the boundary of a substantive right whereas a statute of limitation interposes itself only procedurally to bar the remedy after a substantive right has vested." Ibid.; see also Consol. Grain & Barge Co. v. Structural Sys., Inc., 2009 OK 14, ¶ 8, 212 P.3d 1168, 1171.

¶16 "There were no statutes of limitations at common law; they are creatures of statutes." Lake v. Lietch, 1976 OK 45, ¶ 13, 550 P.2d 935, 937. "Because there is a strong policy in Oklahoma against unwarranted modification of statutory limitations, we must first determine whether" section 7700-609 "is a statute of limitation or a statute of repose." See Reynolds, 1988 OK 88, ¶ 6, 760 P.2d, at 819. Section 7700-609 states:

A. If a child has an acknowledged father, a signatory to the acknowledgment of paternity may commence a proceeding seeking to challenge the paternity of the child only within the time allowed under Section 15 or 16 of this act.

B. If a child has an acknowledged father or an adjudicated father, an individual, other than the child, who is neither a signatory to the acknowledgment of paternity nor a party to the adjudication and who seeks an adjudication of paternity of the child shall commence a proceeding not later than two (2) years after the effective date of the acknowledgment or adjudication.

C. A proceeding under this section is subject to the application of Section 16 of this act.

10 O.S.2011, § 7700-609. This Court has not yet addressed which type of statutory time bar section 7700-609(B) is, but we do so today.

¶17 When this Court answers questions of statutory interpretation, our primary goal is to ascertain and follow the intent of the Oklahoma Legislature. See Toch, 2020 OK 81, ¶ 21, 474 P.3d, at 866. In seeking the Legislature's intent, we "may look at each part of the statute, other statutes on the same subject, and the consequences of any particular interpretation." Id., ¶ 22, 474 P.3d, at 866. "It is well settled that subsequent amendments to an act can be used to ascertain the meaning of the prior statute." Cloudi Mornings, LLC. v. City of Broken Arrow, 2019 OK 75, ¶ 18, 454 P.3d 753, 759; Quail Creek Golf & Country Club v. Okla. Tax Comm'n, 1996 OK 35, ¶¶ 9-11, 913 P.2d 302, 304. "Where the meaning of a prior statute is subject to serious doubt and has not been judicially determined, a presumption arises that a subsequent amendment was meant to clarify, as opposed to change, the prior statute." Cloudi Mornings, 2019 OK 75, ¶ 18, 454 P.3d, at 759. "A subsequent statute clarifying a prior statute can be used to determine the meaning of the prior statute even if the interpretation affects alleged vested rights." Ibid.

¶18 Prior to enactment of the UPA, this Court addressed a paternity challenge based on a mother's alleged fraud in signing a statement acknowledging paternity. Hill v. Blevins, 2005 OK 11, 109 P.3d 332. The Court noted that under the law at the time, a statement acknowledging paternity had the same legal effect as an order of paternity entered in a court proceeding. Id., at ¶ 8, 109 P.3d, at 335; see 10 O.S. Supp. 2004, § 70(B)(1). The putative father in Hill requested the district court vacate the acknowledgment of paternity pursuant to 12 O.S.2001, § 1031(4), which required that proceedings to vacate an order must be commenced within two years from when it was entered. The Court noted that: "The complaining party need not have actual notice of the fraud. Constructive notice of fraud from public records, required by law to be kept, is sufficient to set the statute of limitations in motion." Hill, 2005 OK 11, ¶ 10, 109 P.3d, at 335. The Court found the alleged father had knowledge of a positive pregnancy test on a specific date and as a result was chargeable with the knowledge that a positive pregnancy test was followed by the birth of a child, issuance of a birth certificate, and potential matters of support or visitation. Id., at ¶ 11, 109 P.3d, at 335--36. But the alleged father waited until the child was almost six years old to file suit. Ibid. The Court found that because the means for discovering Mother's alleged fraud were available earlier, the case was time barred. Id., 109 P.3d, at 336.

¶19 In 2006, the Oklahoma Legislature adopted the Uniform Parentage Act. See 2006 Okla. Sess. Laws ch. 116, section 42, HB 2967. Contained within the UPA, section 7700-609 has three parts. Subsection A allows signors of the acknowledgment of paternity to commence a proceeding to challenge the paternity of the child within the time allowed under section 15 or section 16 of the act. Sections 15 and 16 are references to the section numbers used in the enacting bill, HB 2967. See 2006 Okla. Sess. Laws ch. 116. Section 15 is a reference to the law codified at title 10, section 7700-307. Section 16 is a reference to the law codified at title 10, section 7700-308. The district court relied on subsection B of 7700-609, this section allows an individual who did not sign an acknowledgment of paternity to commence paternity proceedings not later than two years from the effective date of the acknowledgment of paternity. Finally, subsection C states that "a proceeding under this section is subject to the application of section 16 of this Act." Again, section 16 is a reference to section 7700-308. At the time of enactment, section 7700-308 stated that after the period of rescission allowed in section 7700-307, signors to the acknowledgment of paternity could commence a proceeding to challenge the acknowledgment only on the basis of fraud, duress, or material mistake of fact and within two years after the acknowledgment was executed.

¶20 The relationship between a parent and child is a fundamental right. See In re S.J.W., 2023 OK 49, ¶ 26, ___ P.3d __; see also In re Chad S., 1978 OK 94, ¶ 12, 580 P.2d 983, 985. The United States Supreme Court has noted that it is "'plain beyond the need for multiple citation' that a natural parent's 'desire for and right to "the companionship, care, custody, and management of his or her children"' is an interest far more precious than any property right." Santosky v. Kramer, 455 U.S. 745, 758--59, 102 S. Ct. 1388, 1397, 71 L. Ed. 2d 599 (1982) (quoting Lassiter v. Dep't of Social Servs. of Durham Cty., N.C., 452 U.S. 18, 27, 101 S. Ct. 2153, 2160, 68 L. Ed. 2d 640 (1981)). As such, it is unreasonable that the Legislature, through section 7700-609(B) would extinguish a putative father's paternity rights before he could reasonably discover the possibility that he was a father. Rather, it is reasonable to construe section 7700-609 to be a statute of limitations subject to exceptions. In determining the timeliness of an alleged cause of action, we have previously stated

the legislative policy in prescribing a period of limitations for the commencement of actions may well be borne in mind. The statute of limitations is a statute of repose, enacted as a matter of public policy to fix a limit within which an action must be brought, or the obligation is presumed to have been paid, and is intended to run against those who are neglectful of their rights, and who fail to use reasonable and proper diligence in the enforcement thereof. The underlying purpose of statutes of limitations is to prevent the unexpected effort at enforcement of stale claims concerning which persons interested have been thrown off their guard by want of prosecution for a long time.

Seitz v. Jones, 1961 OK 283, ¶ 11, 370 P.2d 300, 302. Construing section 7700-609 as a statute of limitation subject to exceptions follows the legislative policy of protecting fundamental parental rights. Construing section 7700-609 as a statute of repose, on the other hand, would lead to absurd consequences in those situations where a mother intentionally misrepresents material facts regarding their pregnancy, childbirth, or the paternity of the child, that could not have been discovered with reasonable diligence and as a result, the putative father would lose all possibility of a relationship with his child while the mother received the benefit of her misbehavior. See Wylie v. Chesser, 2007 OK 81, ¶ 19, 173 P.3d 64, 71. That construction is not congruent with a legislative intent for the statute to run against one who is neglectful of his rights and allows mothers who commit fraudulent activity to benefit from the delay in onset of proceedings due to their own intentional misrepresentation of material facts.

¶21 The original version of the UPA did not explicitly state whether the Legislature intended it to operate as a statute of repose or one of limitations. And there has been no precedential judicial determination[11] regarding whether a putative father could challenge a determination of paternity more than two years after the acknowledgment was signed, but within less then two years of learning of fraud. But since this case originated, the Oklahoma Legislature amended title 10, section 7700-308,[12] regarding proceedings to challenge acknowledgment or denial of paternity, and section 7700-607(D),[13] regarding limitations of actions in proceedings to adjudicate parentage, in order to clarify applicable limitation periods for actions challenging paternity that involve fraud.[14] Although the district court was not bound by the amendments of sections 7700-308 and 7700-607 which did not go into effect until after the court's order was filed, we are permitted to review them in order to better understand the intent of the Legislature and the meaning of section 7700-609.

¶22 The recent amendments to the UPA recognize the fundamental nature of the parent-child relationship and safeguard its status. Section 7700-607(D), as recently enacted, applies to situations such as the one Scott has alleged here. It allows an acknowledged, presumed, or putative father the ability to challenge an acknowledgment of paternity at any time before the child is 18 on the basis of fraud. Where a mother intentionally misrepresents a material fact that could not be discovered with reasonable diligence, these amendments clearly allow a putative father the opportunity, until the child is an adult, to discover those actions before his parent-child relationship is effectively terminated without any notice to him. The recent statutory amendments to the UPA clarify that the Legislature intended section 7700-609 is a statute of limitations subject to exceptions. See Quail Creek Golf & Country Club, 1996 OK 35, ¶¶ 9-11, 913 P.2d, at 304; see also Cloudi Mornings, 2019 OK 75, ¶ 18, 454 P.3d, at 759. We hold that title 10, section 7700-609 is a statute of limitations subject to exceptions.

¶23 Contrary to COCA's recitation of the "undisputed facts before the court," the record does not show that Scott firmly believed that he was the biological father when Child was born. See contra COCA op. 10. Rather, the record before this Court fails to show when the relationship between Scott and Mother actually took place or concluded, when Scott learned of Mother's pregnancy or childbirth, when he first thought that he was Child's father, when he became aware of the Acknowledgment of Paternity, or when he came to believe Mother committed fraud. The district court erred in granting summary judgment based on its determination that section 7700-609 is a statute of repose and erred in dismissing Scott's claim.

IV. CONCLUSION

¶24 The opinion of the Court of Civil Appeals is vacated in part and the trial court is reversed. We need not reach the other issues before us. This matter is remanded to the district court.

COURT OF CIVIL APPEALS OPINION VACATED IN PART,
DISTRICT COURT REVERSED, AND
CASE REMANDED FOR FURTHER PROCEEDINGS.

Kane, C.J. (with separate writing), Kauger, Winchester, Edmondson, Combs, Gurich (with separate writing), and Darby, JJ., concurring;

Rowe, V.C.J. (with separate writing) and Kuehn (with separate writing), J., dissenting.

FOOTNOTES

[1] "Issues not presented in the petition for certiorari will not be considered by the Supreme Court." Hough v. Leonard, 1993 OK 112, ¶ 16, 867 P.2d 438, 446 (quoting Okla. Sup. Ct. R. 3.15(A)).

[2] "For purposes of the Uniform Parentage Act: 1. 'Acknowledged father' means a man who has established a father-child relationship by signing an acknowledgment of paternity under Article 3 of the Uniform Parentage Act;" 10 O.S.2011, § 7700-102 (1). Section 7700-102 was amended in 2019, but did not change the definition of an acknowledged father.

[3] We take judicial notice that on May 31, 2013, less than three months after the Acknowledgment of Paternity was signed, Mother filed a paternity action against the acknowledged father in Blaine County District Court in FP-2013-10. Mother dismissed the paternity proceeding, with prejudice, on March 22, 2019, approximately two months after this proceeding was filed.

[4]

A. If a child has an acknowledged father, a signatory to the acknowledgment of paternity may commence a proceeding seeking to challenge the paternity of the child only within the time allowed under Section 15 or 16 of this act.

B. If a child has an acknowledged father or an adjudicated father, an individual, other than the child, who is neither a signatory to the acknowledgment of paternity nor a party to the adjudication and who seeks an adjudication of paternity of the child shall commence a proceeding not later than two (2) years after the effective date of the acknowledgment or adjudication.

C. A proceeding under this section is subject to the application of Section 16 of this act.

10 O.S.2011, § 7700-609. Section C refers to Section 16 of the Uniform Parentage Act, 2006 Okla. Sess. Laws ch. 116, HB 2967, § 42, which was codified as title 10, section 7700-308. See 2006 Okla. Sess. Laws ch. 116. Section 7700-308 was amended effective November 1, 2019, see infra note 10.

[5] The court minute stated:

ACKNOWLEGMENT [sic] OF PATERNITY IS ADMITTED UNDER SEAL; RESPONDENT PRESENT WITH ATTORNEY MARIA TULLY ERBAR; PLAINTIFF DERRICK SCOTT AND HIS ATTORNEY ERIC EDWARDS DID NOT APPEAR; THE COURT GRANTS RESPONDENT'S MOTION TO DISMISS AND GRANTS SUMMARY JUDGMENT BASED UPON THE AOP THAT WAS FILED IN COURT UNDER SEAL AND MOTIONS FILED AND EVIDENCE PRESENTED PRESENTED [sic] AT THE HEARING; REQUESTING ATTORNEYS FEES ISSUE IS RESERVED BY APPLICATION OF THE RESPONDENT; EDWARD'S SECRETARY ORALLY REQUESTED A CONTINUANCE AT APPROX. 10:00 AM RIGHT BEFORE COURT AND THE COURT DENIED THE ORAL REQUEST.

Blaine Cty. Dist. Ct., FP 2019-1, Mar. 4, 2019. On March 6, 2019. Scott filed a motion to vacate the minute order. The minute order was vacated on June 21, 2019.

[6] Scott attached a copy of his petition which he filed in the district court on April 15, 2020. Scott argued that the Oklahoma Legislature's recent amendment of title 10, section 7700-607(D) made it the controlling statute in this case and that the Legislature, in essence, conceded or recognized that section 7700-609(B) was unconstitutional on its face. Scott acknowledged that HB 2270, amending section 7700-607(D) was submitted on February 19, 2019, and approved by the Governor on April 25, 2019 with an effective date of November 1, 2019, but Scott had only recently become aware of the amendment to bring it to the court's attention.

[7] On November 4, 2021, the district court denied the motion to vacate by minute entry. On December 30, 2021, the Court of Civil Appeals filed an order which noted the minute entry and directed both parties to show cause within 15 days why the court should not proceed. Neither party responded.

[8] On April 11, 2022, Mother filed a motion to settle journal entry in district court, regarding the motion to vacate. On June 7, 2022, the district court filed its order denying the motion to vacate.

[9] And on July 5, 2022, Scott filed a Second Amended Petition in Error and Motion for Additional Time to Supplement the Record on Accelerated Appeal, appealing from the district court's June 7, 2022 order denying the motion to vacate.

On July 25, the Court of Civil Appeals denied Scott's motion for additional time to supplement the record and struck the Second Amended Petition in Error and Second Amended Designation of Record from the appellate docket. The Court of Civil Appeal's order stated that "Appellant's effort to extend his appeal by amending his petition in error at this late date is untimely."

As we have repeatedly stated, a minute entry is not an appealable order. Laubach v. Laubach, 2022 OK 78, ¶ 15, -- P.3d --. Thus the Court of Civil Appeals erred in lifting the stay in the appeal and erred in striking the Second Amended Petition in Error and Second Amended Designation of Record timely appealing the June 7, 2022 order within less than thirty days after it was filed. See 12 O.S. Supp. 2017, § 990A(A); see also Corbit v. Williams, 1995 OK 53,¶ 9, 897 P.2d 1129, 1131 (A "'Court Minute' is not a judgment, decree or appealable order for the purpose of commencing the time to appeal"); see also Kordis v. Kordis, 2001 OK 99, ¶ 6, 37 P.3d 866, 869 ("an order disposing of a term-time motion to vacate, filed under 12 O.S.1991 § 1031.1, is a separately appealable, post-judgment event"). Because we vacate the Court of Civil Appeals' opinion in regard to this issue and provide Scott his requested relief, reversing the district court, the Second Amended Petition in Error is moot.

[10] "Litigants--and the courts--often conflate the discovery rule, equitable tolling, and estoppel. Nonetheless, these are separate theories a plaintiff may employ to defeat a statute of limitations defense. See Calvert v. Swinford, 2016 OK 100, ¶ 11, 382 P.3d 1028, 1033 (discovery rule); Masquat v. DaimlerChrysler Corp., 2008 OK 67, ¶ 18, 195 P.3d 48, 54-55 (equitable tolling based on fraudulent concealment); Jarvis v. City of Stillwater, 1987 OK 5, ¶ 4, 732 P.2d 470, 472-73 (estoppel)." Crawford ex rel.C.C.C. v. OSU Med. Tr., 2022 OK 25, ¶ 5 n.1, 510 P.3d 824, 829 n.1.

[11] Published opinions of the Court of Civil Appeals merely have persuasive effect; they hold no precedential value. See Okla. Sup. Ct. R. 1.200(d).

[12] A. After the period for rescission under Section 7700-307 of this title has expired, a signatory of an acknowledgment of paternity may commence a proceeding to challenge the acknowledgment only:

1. On the basis of duress or material mistake of fact within two (2) years after the acknowledgment is executed; or

2. On the basis of fraud at any time in accordance with subsection D of Section 7700-607 of this title.

10 O.S. Supp. 2019, § 7700-308(A) (effective Nov. 1, 2019) (emphasis added).

[13] D. A proceeding seeking to disprove the father-child relationship between a child and the child's presumed or acknowledged father may be maintained at any time before the child is eighteen (18) years of age on the basis of fraud as defined in Section 7700-102 of this title. A party bringing a challenge under this section has the burden of proving fraud by clear and convincing evidence. Upon a finding of fraud, the court shall conduct a best-interest hearing to determine if genetic testing should be ordered pursuant to Section 7700-608 of this title. Court-ordered genetic testing shall be performed prior to an order of nonparentage under Sections 7700-621 and 7700-631 of this title. Any genetic test performed shall be in accordance with Sections 7700-501 through 7700-511 of this title.

1. The cost of the genetic testing to disprove parentage shall be advanced by the individual challenging parentage;

2. In a court order of nonparentage, a noncustodial parent has no right to reimbursement for child support and medical support payments made under a child support order; and

3. The court shall order the State Department of Health, Division of Vital Records, to amend the birth record of the child, if appropriate.

10 O.S. Supp. 2019, § 7700-607(D) (effective Nov. 1, 2019) (emphasis added).

[14] "'Fraud' means an intentional misrepresentation of a material fact that could not have been discovered with reasonable diligence and was reasonably relied upon;" 10 O.S. Supp. 2019, § 7700-102 (9).

 

 

Kane, C.J., concurring:

¶1 While § 77--609 is valid, the Court of Civil Appeals applied the wrong Constitutional test to analyze the proper application of said statute.

¶2 This case involves a troubling fact pattern, wherein it is set forth that the alleged biological father's equal protection and due process rights were abridged when a third-party claimed paternity without his knowledge. The net result was that the putative father of a child was stripped of his parental rights without notice, and he is now being deprived of an opportunity to be heard by the government due to the passage of time.

¶3 Citing to Gladstone v. Bartlesville Indep. Sch. Dist. No. 30 (I-30), 2003 OK 30, 66 P.3d 442, the Court of Civil Appeals correctly noted that, absent a suspect classification or the infringement upon a fundamental right, the rational basis test should govern any dispute involving alleged governmental interference with a right.

¶4 Yet, while it is axiomatic that a parent has a fundamental right to the care, custody, companionship and management of his or her child, protected by both the Federal and State Constitutions, see In re K.H., 2021 OK 33, ¶ 26, 507 P.3d 647, 653, the Court of Civil appeals determined that the unmarried putative father was entitled to mere rational basis consideration.

¶5 The proper level of scrutiny for interference with parental rights to care, custody, and control of a child in this particular scenario has not been set forth by this Court.[1] The Court of Civil Appeals concludes that since the putative father was not married to the mother, he had no fundamental rights to seek a relationship with his child. Hence, the Court of Appeals applied what it termed a "lenient test" to the State's attempt to cut off the putative father's rights.

¶6 Absent authority from this Court, the lower court and the Court of Civil Appeals made the legal judgment call that an unmarried parent had no fundamental rights to a relationship with his child. For the benefit of the bench and the bar, we should speak with clarity on this subject. In my view, the existence or absence of a marriage license should not control over whether or not a parent has a fundamental right.[2]

FOOTNOTES

[1] To the same effect at the federal level. See Margaret Ryznar, A Curious Parental Right, 71 SMU L. Rev. 127, 157 (2018) ("The U.S. Supreme Court has not articulated a consistent level of scrutiny for interferences with the parental right to the care, custody, and control of a child, despite using language that characterizes it as a fundamental right. As a result, the lower courts have split in their approaches, causing inconsistency and unpredictability.").

[2] The Court of Civil Appeals has applied the strict scrutiny test to governmental interference with parental rights in other cases. See, e.g., In re Blevins, 1984 OK CIV APP 41, ¶ 9, 695 P.2d 556, 559-60 ("The courts will apply the tests of strict judicial scrutiny to a state law which interferes with the exercise of fundamental rights and liberties explicitly or implicitly protected by the Constitution."); San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1 (1973).

 

 

Gurich, J., concurring specially:

¶1 I concur, but I write specially to address the fact that COCA's plurality opinion in this case is inappropriate.

¶2 Pursuant to Article VII, Section 5 of the Oklahoma Constitution: "A majority of the members of the Supreme Court shall constitute a quorum and the concurrence of the majority of said Court shall be necessary to decide any question." Okla. Const. Art. VII, § 5 (emphasis added). Therefore, plurality opinions are prohibited.

¶3 This prohibition applies not only to the Supreme Court, but to COCA as well. Oklahoma Supreme Court Rule 1.174 states that for appeals assigned to COCA, "The concurrence of two judges shall be necessary to make a decision on the merits." Okla. S.Ct. R. 1.174, Tit. 12, ch. 15, App. 1. See also 20 O.S. Supp. 1996, § 30.2 ("Each division shall consist of three Judges, at least two of whom shall concur in any decision"); In the Matter of the Estate of Brown, 2013 OK 102, 509 P.3d 66 (Holding that the petition for certiorari was premature because COCA's opinion lacked a majority vote).

¶4 In this case, Judges Rapp and Blackwell concurred as to Part III A, with Wiseman concurring in result. Judges Rapp and Wiseman concurred as to Part III B, with Blackwell dissenting. As concurring in result votes cannot be counted as votes to form a majority opinion, In the Matter of the Estate of Brown, 2013 OK 102, 509 P.3d 66 (citation omitted), there were no two judges who concurred with the entirety of the opinion. This is inconsistent with the requirements of Oklahoma Supreme Court Rule 1.174 and Title 20, Section 30.2, and therefore the plurality opinion in this case is inappropriate.

 

 

ROWE, V.C.J., DISSENTING:

¶1 The majority fails to adequately distinguish between a statute of limitations and a statute of repose. A statute of limitations prescribes a time period within which an action may be initiated and which begins to run when the cause of action fully accrues. Consolidated Grain & Barge Co. v. Structural Sys., Inc., 2009 OK 14, ¶ 9, 212 P.3d 1168, 1171. A cause of action accrues when all the elements of the underlying claim are present. Id. A statute of limitation provides an affirmative defense, which can be waived; it does not deprive the court of jurisdiction to act upon the claim if untimely filed. Id.

¶2 Alternatively, a statute of repose prescribes a time period within which an action may be initiated and which begins to run from the date of a specific act or event. Id. ¶ 10, 212 P.3d at 1171. Because the cause of action need not have fully accrued for a statute of repose to come into effect, it may or may not allow for the plaintiff's discovery of the cause of action. Id. A statute of repose operates on the substantive right to pursue a cause of action and will extinguish that right even if it has not fully accrued. Id.

¶3 I cannot agree with the majority that it is unreasonable that the Legislature could have intended the two-year limitation for a putative father to seek an adjudication of paternity, as contained in 10 O.S.2011 § 7700-609(B), to serve as a statute of repose, rather than a statute of limitations. The text of § 7700-609(B) clearly reflects the Legislature's intent to have it operate as a statute of repose.

¶4 Section 7700-609(B) states:

If a child has an acknowledged father or an adjudicated father, an individual, other than the child, who is neither a signatory to the acknowledgment of paternity nor a party to the adjudication and who seeks an adjudication of paternity of the child shall commence a proceeding not later than two (2) years after the effective date of the acknowledgment or adjudication.

(emphasis added). Here, the two-year limitation begins to run from the date of the acknowledgment or adjudication of paternity. Because the time period runs from the date of a specific event, § 7700-609(B) is clearly intended as a statute of repose. Accordingly, Petitioner's cause of action is extinguished. The fact that he discovered his claim of paternity too late, whether due to alleged fraud on Defendant's part or any other reason, is not relevant at this point.

¶5 Despite the seemingly harsh nature of this outcome, there are compelling public policy considerations behind the strict two-year time limit. Proceedings involving claims of paternity inevitably have an impact on the child's well-being, and in instances like this, where there is already an acknowledged or adjudicated father, subsequent claims of paternity run the risk of injecting turmoil and confusion into the child's life. Additionally, a putative father cannot claim the two-year limit is unreasonable, nor can he claim to have been completely unaware of his claim of paternity during that time. Babies are not delivered by a stork. Men beware--nine months after sexual intercourse, you may be a father.

¶6 The Legislature is vested with authority to establish public policy vis-à-vis the two-year statute of repose. As this does not infringe upon a constitutional right, I would affirm the District Court's order granting Respondent's motion to dismiss. I respectfully dissent.

 

 

KUEHN, J., DISSENTING:

¶1 Under the applicable law, Scott's window to allege paternity closed years ago. A bare claim of fraud cannot resurrect his claim now. The analysis in Hill v. Blevins, 2005 OK 11, 109 P.3d 332, is directly on point. Even if Scott could allege fraud to toll the running of the limitations period, and even if he could prove that fraud, he still loses, because he possessed sufficient facts to raise his challenge long before the law foreclosed that right. The upshot is that if a man thinks he has fathered a child, he has an opportunity to timely acknowledge parenthood or have his status judicially determined. But he cannot wait in the shadows indefinitely. Accordingly, I dissent.

A. Overview of relevant law.

¶2 The Uniform Parentage Act (10 O.S. § 7700-101 et seq.; "the Act")[1] divides men who claim parentage into several classes. The Act distinguishes among acknowledged fathers (who formally declare paternity), adjudicated fathers (whose paternity is determined by a court), and presumed fathers (who are married to the mother, or living with the child, at relevant times). 10 O.S. § 7700-102(1), (2), (16) and § 7700-204. Their rights are not co-equal. Scott is none of these. He is an alleged father -- "a man who alleges himself to be [] the genetic father or a possible genetic father of a child, but whose paternity has not been determined." 10 O.S. § 7700-102(3).[2] While the Act defines alleged fathers, it rarely mentions them specifically.

¶3 Since a few days after the birth of Foster's child in February 2013, there has been an acknowledged father -- "a man who has established a father-child relationship by signing an acknowledgment of paternity...." 10 O.S. § 7700-102(1). An acknowledgment must be joined by the mother, but notably, it requires no genetic confirmation. 10 O.S. § 7700-302(A)(5). It is equivalent to an adjudication of paternity, and confers "all of the rights and duties of a parent." 10 O.S. § 7700-305(A).[3]

¶4 The Act limits the time to challenge parentage depending on the circumstances and the challenger's status. The number of possible scenarios is daunting. Parties to an acknowledgement of paternity must be informed that challenges are permitted "only under limited circumstances" and are barred after two years. 10 O.S. § 7700-302(A)(5). After a 60-day window to rescind the acknowledgment for any reason, one who has acknowledged paternity may only challenge on the grounds of "fraud, duress, or material mistake of fact," and must make that claim within two years after the acknowledgment was executed. 10 O.S. § 7700-308(A).

¶5 Additional direction on time limits for a challenge is found in Section 609. Paragraph A reiterates the two-year window for signatories to an acknowledgment of paternity. For those who weren't parties to the acknowledgment -- like Scott -- Paragraph B provides:

If a child has an acknowledged father or an adjudicated father, an individual, other than the child, who is neither a signatory to the acknowledgment of paternity nor a party to the adjudication and who seeks an adjudication of paternity of the child shall commence a proceeding not later than two (2) years after the effective date of the acknowledgment or adjudication.

10 O.S. § 7700-609(B) (emphasis added). Foster claimed this provision barred Scott's suit, filed almost six years after the acknowledgment of paternity. The trial court, and the Court of Civil Appeals, agreed.

¶6 Instead, the Majority looks to post-judgment amendments to yet another provision in the Act -- Section 607 -- and retroactively applies them here. The 2019 changes actually affect both Sections 308 and 607. A new paragraph was added to the latter, and the Majority reads it as 'clarifying' that the Legislature has always intended to give an alleged father -- one who never timely acknowledged paternity or demanded that his paternity be judicially decided -- the opportunity to upend the relationship between a child and a presumed or acknowledged father at any time before the child's eighteenth birthday on the grounds of fraud. 10 O.S.Supp.2019, § 7700-607(D).[4] In the same bill, the Legislature amended Section 308, which (as noted) also provides limitations on challenges. Cross-referencing Section 607(D), the amended version of Section 308 allows acknowledged fathers to disown paternity on the basis of fraud at any time before the child's eighteenth birthday. However, those who previously denied paternity are excluded from this change -- even if the prior denial was also procured by fraud.[5] Compare 10 O.S.Supp.2019, § 7700-607(D) with 10 O.S.Supp.2019, § 308(B).

¶7 Did the Legislature, with these amendments, really intend to allow one who neither timely acknowledged nor timely denied paternity -- someone who may be a complete stranger to the family unit -- to intervene, even some nineteen years after a sexual encounter, and claim paternity through a bare allegation of fraud? All while maintaining a flat two-year limitation on one who formally denied paternity, even if the denial may also have been procured by fraud?

¶8 The 2019 amendments present interpretive difficulties to be sure. But we need not tease out their meaning today. My point in surveying them is to show that they mark a drastic change in the law, and cannot be used to interpret the laws that apply to this case.

B. The 2019 amendments are a marked change from prior law.

¶9 The Majority relies on amendments to the Act that did not go into effect until months after the trial court made its ruling in June 2019. The court ruled that Scott's claim was barred under the law existing at the time (Section 609(B)). Whatever the 2019 amendments mean, they cannot be applied to resurrect Scott's claim.

¶10 When a statute is amended, the legislature may have intended to either (1) effect a change to existing law or (2) clarify that which was previously doubtful. Magnolia Pipe Line Co. v. Okla. Tax Comm., 1946 OK 113, ¶ 11, 167 P.2d 884. There was nothing doubtful about the prior law in this case. It imposed a two-year limitation period for any challenge by a signatory to an acknowledgment or denial of paternity, and the same limit for any challenge by one who was not a signatory to an acknowledgment or party to an adjudication -- including alleged fathers such as Scott. 10 O.S. §§ 7700-308, 7700-609. The amendments changed some of these limitations, but not all.

¶11 Because the 2019 amendments drastically alter existing law, the practical effect of the Majority's analysis is a retroactive application of the amendments. We presume amendments operate prospectively, and the presumption is only rebutted where a contrary intent is expressly declared or necessarily implied by the statutory text. Kluver v. Weatherford Hosp. Authority, 1993 OK 85, ¶ 7, 859 P.2d 1081. No such intention can be found here, particularly since the statute on which the trial court based its ruling, 10 O.S. § 7700-609(B), remains intact.

¶12 Even when limitation statutes are extended by later amendments, they only extend the life of currently-existing claims; they do not revive claims that expired before the amendment. Trinity Broadcasting Corp. v. Leeco Oil Co., 1984 OK 80, ¶ 7, 692 P.2d 1364. This is a matter of constitutional mandate. "The Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this State." Okla.Const. art 5, § 52. The test is whether the claim still exists at the time the limitation period is extended. If a plaintiff's right to recover was barred by a statute of limitations before the statute is amended, it is still barred. Mires v. Hogan, 1920 OK 308, ¶ 9, 192 P. 811.

¶13 Whatever the 2019 amendments actually mean, no one can deny that they add to and materially change both Sections 607 and 308. The Majority proposes nothing less than a retroactive application of these amendments, in an attempt to get Scott into the new scheme. This promises catastrophic results. It would not just permit Scott's challenge. It would resurrect untold numbers of paternity claims by men who, for the past eighteen years, did nothing to assert their "fundamental right" to fatherhood.[6]

C. The trial court's ruling was correct, whether the applicable law
is a statute of limitation or a statute of repose.

¶14 The trial court, and the Court of Civil Appeals, concluded that Section 609(B) is a "statute of repose." Simply put, a time-frame for bringing suit is labeled a "statute of limitation" if it is susceptible to tolling for equitable reasons, and a "statute of repose" if the legislature made it clear that no such exceptions are allowed. The "discovery rule," discussed below, is a judicially-created exception. The idea is that one should not be allowed to benefit by watching the time for another's claim expire when he has hidden the facts giving rise to the other's cause of action. In contrast, a statute of repose is a firm outer boundary on when a claim can accrue at all -- no exceptions.[7]

¶15 Scott's argument fails, even if the two-year period specified in Section 609(B) is tolled by fraud on Foster's part. But how do we know that Section 609(B) is a statute of repose which permits no tolling? Because Section 308 says so.

¶16 While Section 308 provides that a signatory to an acknowledgment of paternity may mount a challenge, the challenge must be brought within two years, and fraud is one of only three bases for allowable challenge. This is a statute of repose. An allegation of fraud does not extend the time to sue; it is baked into the ability to sue at all. The limitation in Section 308 is (1) only for fraud, and (2) only within two years. And Section 609, on which the trial court relied, specifically states Scott's suit "is subject to the application of" Section 308. 10 O.S. § 7700-609(C). Because Section 308 already has fraud baked into the two-year limitation period, Scott can't use an allegation of fraud to further extend it.

¶17 The difference between a statute of limitation, and a statute of repose, may be best summed up this way: "A statute of repose establishes the right not to be sued, rather than the right to sue." 51 Am.Jur.2d Limitation of Actions § 4 (emphasis added). When the law recognizes one man as a father, it can demand vigilance from another who seeks to upend that relationship. "Statutes of repose reflect the legislative conclusion that a point in time arrives beyond which a potential defendant should be immune from liability for past conduct." Id. It is clear that Section 609(B) is a statute of repose, and permits no extensions when the challenger claims his cause of action was hidden from him by fraudulent conduct.[8]

¶18 But even if we ignore all of this, and we do read Section 609(B) as a statute of limitation that is tollable by fraud, Scott still loses. Scott's claim is that (1) Foster always knew he was the child's father; (2) Foster falsely claimed otherwise when, in March 2013, she signed the acknowledgment of paternity in favor of another man; and (3) Foster later admitted Scott was the father. Scott doesn't say when or how Foster made such an admission. In fact, from the record it seems Scott's theory is largely based on an inference. In 2018, Foster had her child's surname changed from the acknowledged father's to Foster's. When Scott learned from the pleadings that the acknowledged father had no role in the child's life since birth, Scott inferred that the 2013 acknowledgment of paternity was a sham. Of course, the trial court's ruling that Section 609(B) was a statute of repose rendered Scott's assertions of fraud irrelevant. But Scott's initial strategy appears to have been that a mere allegation of fraud gets him in the door, and his tactic was to press for discovery in an attempt to uncover evidence to support his theory that Foster knew all along her child's acknowledged father was not the biological father.

¶19 The discovery rule tolls a statute of limitation "until an injured party knows of, or in the exercise of reasonable diligence, should have known of or discovered the injury, and resulting cause of action." Weathers v. Fulgenzi, 1994 OK 119, ¶ 12, 884 P.2d 538 (citation omitted; emphasis added). "A party generally cannot avoid the bar of the statute of limitations, by virtue of the discovery rule, if he or she had the means to discover the facts giving rise to his or her action." 54 C.J.S. Limitations of Actions § 136. The party seeking to invoke the discovery rule is judged by an objective standard, which "does not reward denial or self-induced ignorance." Id. The discovery rule "requires only that the plaintiff be aware of an injury; it does not require the plaintiff to know the full extent of the injury." 54 C.J.S. Limitations of Actions § 135. It is a "very limited exception to limitations and is construed strictly." Id.

¶20 Scott wants to use facts (such as the 2018 name-change proceeding) that stoked his suspicions of fraud as the starting point for his window to sue. But the true test is: When did Scott have sufficient facts giving rise to a potential paternity suit? The answer to that question is: Well within the two-year window. The flames of suspicion may have been stoked in 2018, but the fire had been smoldering for a long time.

¶21 When a woman becomes pregnant, any male she had relations with during a period of time could potentially be the biological father. When any of these men learn of the pregnancy, they are on notice that they could be the father. Any party -- the mother included -- is susceptible to being lied to by any or all of the others. Whatever assurances the mother or her partners may give to one another, only a genetic test can confirm or deny biological parentage.[9]

¶22 Scott admits that within two years after the birth, he suspected he was the child's father. He claims he asked Foster to agree to genetic testing during that time but she refused. Such a refusal would only have bolstered suspicion. In other words, even if Foster personally assured Scott during that time that he could not be the father, Scott suspected, within the two-year period, that this was not true.

¶23 "A cause of action accrues when the damage can be discovered, not when it is actually discovered." 54 C.J.S. Limitations of Actions § 136 (emphasis added). Scott could have timely filed an action to adjudicate paternity and demanded genetic testing -- the only way to prevail if the child already has an acknowledged father. 10 O.S. § 10 O.S. §§ 7700-602(3), 7700-631(1). But for whatever reason, Scott did nothing.[10]

¶24 Hill v. Blevins, 2005 OK 11, 109 P.3d 332, is directly on point. Hill was decided before the Uniform Parentage Act, but the fact pattern and basic analysis is the same as the present case. Hill had a sexual relationship with Reynolds, an unmarried woman. When the child was born, another man acknowledged paternity. Years later, Hill sought to have his paternity established and the prior acknowledgment of paternity in favor of the other man vacated, claiming it was procured by fraud. We held that Hill's suit, some six years after the child's birth, came too late under the two-year limitation period in effect at the time, because the means for discovering the cause of action had long been available to Hill:

Instead of making inquiry about the birth, the issuance of a birth certificate, or matters of support and visitation, Hill waited until the child was almost six years old before he filed suit. The means of discovery of the alleged fraud were no less available to Hill in the fall of 1997 than they were five years later in June of 2002. So, even if Blevins' naming of Sawyer as the father was false, means of discovering the alleged fraud were readily available to Hill any time from and after the issuance of the birth certificate on October 17, 1997, expiring two years later in October of 1999. This suit, filed nearly four years subsequent, July 2003, was correctly found to be time-barred by the trial court.

Id. at ¶ 11.

¶25 Scott's cause of action is not fraud. His cause of action is paternity. Scott's allegation of fraud is simply his way of trying to reset the clock on his underlying claim of paternity.[11] He attempts to use a claim of newly discovered evidence to obscure the fact that he knew enough, within two years of the acknowledgment, to formally claim his "fundamental right" to be a father. That is not how the law works. Like the alleged father in Hill, Scott was "presumptively capable of asserting and protecting his own rights" in a timely fashion, but did not.[12] Hill, 2005 OK 11, ¶ 12, 109 P.3d 332. Discovery of sufficient facts to bring a cause of action, and discovery of facts suggesting an attempt to hide that cause of action, are very different things. Otherwise, the fraud exception would swallow the rule.[13]

¶26 Accordingly, I dissent. Our acceptance of certiorari was limited to one of many claims raised by Scott. Because the Court of Civil Appeals succinctly and correctly decided all of them, I would dismiss certiorari as improvidently granted.

FOOTNOTES

[1] Relevant provisions were amended in 2019, and I address them below. Unless otherwise noted, my citations are to provisions in effect at the time Scott filed his lawsuit. For simplicity and brevity, unless giving the full citation I refer to the section numbers of the Act ("Section 101" instead of "Section 7700-101").

[2] An alleged father does not enjoy the same status as a "presumed" father. 10 O.S. § 7700-102(3). A "presumed" father is "a man who, by operation of law under Section 7700-204 of this title, is recognized as the father of a child until that status is rebutted or confirmed in a judicial proceeding." 10 O.S. § 7700-102(16). Scott doesn't attempt to establish that he is a presumed father, and he incorrectly cites to provisions pertaining to presumed fathers as relevant to his argument (Petition for Certiorari p. 2).

[3] Whether paternity is adjudicated or acknowledged, "[t]he father-child relationship is established." 10 O.S. § 7700-201(B).

[4] Section 607 imposes a two-year limitation on anyone challenging the paternity of a presumed father. It then states that a proceeding to challenge the relationship between a child and a presumed or acknowledged father may be made at any time, so long as all three parties agree to it -- i.e. a friendly paternity suit. 10 O.S § 7700-607. Those provisions remain in effect after the 2019 amendment.

[5] Before November 2019, Section 308 had a two-year statute of repose for any challenge by signatories to an acknowledgment or denial of paternity, and it limited claims in that time-frame to ones for fraud, mistake or duress. The 2019 amendment replaced this scheme with a statute of limitation and two statutes of repose. In short, it allows signatories to an acknowledgment of paternity to make fraud-based challenges at any time, "in accordance with [Section 607(D)]," but maintains a two-year statute of repose for claims of duress or mistake on these parties. The 2019 amendment also maintains a two-year statute of repose on challenges made by signatories to a denial of paternity, and it still limits those challenges to fraud, duress, or mistake. 10 O.S.Supp.2019, § 7700-308(A), (B). The Majority notes the change to paragraph A, but not paragraph B.

[6] In his petition for certiorari, Scott argues that application of Section 607(D) "AFFECTS POTENTIALLY THOUSANDS OF FATHERS AND CHILDREN IN THIS STATE! [sic]"

[7]

Early treatise writers and judges considered time bars created by statutes of limitations, escheat and adverse possession as creating periods of repose. As the courts began to modify statutory limitations by superimposing the "discovery rule," legislatures responded by enacting absolute (not tollable) time bars through statutes of repose. Modern statutes of limitations and statutes of repose are somewhat similar because they both provide repose for the defendant. They are nonetheless significantly different since a statute of limitation merely extinguishes the plaintiff's remedy while a statute of repose may defeat the accrual of a cause of action before one ever arises.

Kirby v. Jean's Plumbing Heat & Air, 2009 OK 65, ¶ 10, 222 P.3d 21.

[8] Even Section 607(D), added in 2019, is a statute of repose (albeit with a very long time-frame), not a statute of limitation. Fraud is the only allowed basis for extending the term, but the time to sue is definite -- not "tolled" due to fraud (it must in any event be brought before the child turns eighteen).

[9] Scott paints himself as somehow being uniquely susceptible to fraud in this situation. I disagree. Any male who has intimate relations with a woman capable of bearing children faces the same potential for fraud. She may falsely claim to be using birth control or be incapable of getting pregnant. If she has relations with more than one man in a short span of time (possibly unbeknownst to any of the male partners), she may claim any one of them is the father. She may do so out of fondness, practicality, mistake, or spite. Or she might name no one. A male partner who cares enough to have relations that could result in pregnancy should conduct himself accordingly.

[10] Scott complains that the law allows a woman to terminate a biological father's parental rights by convincing another man (honestly or otherwise) to formally acknowledge paternity. Nothing in the law requires that the acknowledged father prove the child is his true genetic offspring. But one who believes himself to be the father may challenge an acknowledgment of paternity; he simply must do so timely. Had Scott timely sought and successfully established paternity, he would have been obligated to provide support. 10 O.S. § 83(A).

[11] There is a subtle but important distinction between concealment of facts that prevents one from discovering a fraud, and the "discovery rule," potentially tolling a statute of limitation on any cause of action. 54 C.J.S. Limitations of Actions § 137.

[12] The Majority (at ¶22) seeks to protect alleged biological fathers where a mother "intentionally misrepresents a material fact that could not be discovered with reasonable diligence." This confuses notice of a possible fraud with notice of a possible paternity claim.

[13] In his petition for certiorari, Scott claims the Court of Civil Appeals applied the wrong standard of review. While Foster had moved for summary judgment, Scott claims her argument was more in the nature of a motion to dismiss. Hence, he claims, all of his factual allegations must be taken as true. See Murrow v. Penney, 2023 OK 91, ¶ 15, 535 P.3d 1275. That doesn't change the outcome here. Even assuming Foster lied to Scott in 2013, and confessed as late as yesterday, Scott admits questioning the child's paternity before the two-year period expired.

 

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2014 OK CIV APP 31, 322 P.3d 1070, 
PAUL v. WILLIAMSON
Discussed at Length

 
1984 OK CIV APP 41, 695 P.2d 556, 
Adoption of Blevins, Matter of
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1987 OK 5, 732 P.2d 470, 58 OBJ 273, 
Jarvis v. City of Stillwater
Discussed

 
1988 OK 88, 760 P.2d 816, 59 OBJ 1987, 
Reynolds v. Porter
Discussed at Length

 
1993 OK 85, 859 P.2d 1081, 64 OBJ 2009, 
Kluver v. Weatherford Hosp. Authority
Discussed

 
1993 OK 112, 867 P.2d 438, 64 OBJ 2836, 
Hough v. Leonard
Discussed

 
1994 OK 119, 884 P.2d 538, 65 OBJ 3676, 
Weathers v. Fulgenzi
Discussed

 
1946 OK 113, 167 P.2d 884, 196 Okla. 633, 
MAGNOLIA PIPE LINE CO. v. OKLAHOMA TAX COMM'N
Discussed

 
2001 OK 99, 37 P.3d 866, 72 OBJ 3420, 
KORDIS v. KORDIS
Discussed

 
1920 OK 308, 192 P. 811, 79 Okla. 233, 
MIRES v. HOGAN.
Discussed

 
1995 OK 53, 897 P.2d 1129, 66 OBJ 1829, 
Corbit v. Williams
Discussed

 
2003 OK 30, 66 P.3d 442, 
GLADSTONE v. BARTLESVILLE INDEPENDENT SCHOOL DISTRICT NO. 30
Discussed

 
2005 OK 11, 109 P.3d 332, 
HILL v. BLEVINS
Discussed at Length

 
1996 OK 35, 913 P.2d 302, 67 OBJ 869, 
Quail Creek Golf v. Okl. Tax Comm.
Discussed at Length

 
2007 OK 81, 173 P.3d 64, 
WYLIE v. CHESSER
Discussed

 
2008 OK 67, 195 P.3d 48, 
MASQUAT v. DAIMLERCHRYSLER CORP.
Discussed

 
2009 OK 14, 212 P.3d 1168, 
CONSOLIDATED GRAIN & BARGE CO. v. STRUCTURAL SYSTEMS, INC.
Discussed at Length

 
2009 OK 65, 222 P.3d 21, 
KIRBY v. JEAN'S PLUMBING HEAT & AIR
Discussed

 
2010 OK 3, 230 P.3d 853, 
ROGERS v. QUIKTRIP CORP.
Discussed

 
1976 OK 45, 550 P.2d 935, 
LAKE v. LIETCH
Discussed

 
2013 OK 102, 
IN THE MATTER OF THE ESTATE OF BROWN
Discussed

 
1978 OK 94, 580 P.2d 983, 
MATTER OF CHAD S.
Discussed

 
2016 OK 100, 382 P.3d 1028, 
CALVERT v. SWINFORD
Discussed

 
2019 OK 75, 454 P.3d 753, 
CLOUDI MORNINGS, LLC. v. CITY OF BROKEN ARROW
Discussed at Length

 
2019 OK 84, 455 P.3d 918, 
VIDEO GAMING TECHNOLOGIES v. TULSA COUNTY BD. OF TAX ROLL CORRECTIONS
Discussed

 
2020 OK 81, 474 P.3d 859, 
TOCH, LLC v. CITY OF TULSA
Discussed at Length

 
2021 OK 20, 489 P.3d 20, 
FRATERNAL ORDER OF POLICE v. CITY OF NORMAN
Discussed

 
2021 OK 33, 507 P.3d 647, 
IN THE MATTER OF K. H.
Discussed

 
2022 OK 25, 510 P.3d 824, 
CRAWFORD v. OSU MEDICAL TRUST
Discussed

 
1961 OK 283, 370 P.2d 300, 
SEITZ v. JONES
Discussed

 
2022 OK 78, 
LAUBACH v. LAUBACH
Cited

 
2023 OK 49, 
IN THE MATTER OF S.J.W.
Cited

 
2023 OK 91, 
MURROW v. PENNEY
Cited

 
1984 OK 80, 692 P.2d 1364, 55 OBJ 2392, 
Trinity Broadcasting Corp. v. Leeco Oil Co.
Discussed

 
1985 OK 25, 698 P.2d 17, 
Frey v. Independence Fire and Cas. Co.
Discussed

Title 10. Children

 
Cite
Name
Level

 
10 O.S. 7700-101, 
Short Title
Cited

 
10 O.S. 7700-102, 
Definitions
Discussed at Length

 
10 O.S. 7700-201, 
Establishment of Mother-Child and Father-Child Relationships
Cited

 
10 O.S. 7700-302, 
Content and Form of Acknowledgment - Void and Voidable Acknowledgments - Authentication
Discussed

 
10 O.S. 7700-305, 
Effect of Valid Acknowledgment or Denial of Paternity
Cited

 
10 O.S. 7700-308, 
Proceeding to Challenge Acknowledgment or Denial of Paternity - Burden of Proof
Discussed at Length

 
10 O.S. 7700-607, 
Limitations of Actions
Discussed at Length

 
10 O.S. 7700-609, 
Time Limitation for Commencing Proceeding - Signatory to Acknowledgement of Paternity - Others
Discussed at Length

 
10 O.S. 10, 
Repealed
Cited

 
10 O.S. 70, 
Repealed
Cited

 
10 O.S. 83, 
Mother's and Father's Liability to Support and Educate Child - Expenses - Change of Surname
Cited

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 990A, 
Appeal to Supreme Court of Oklahoma - Filing of Petition - Rules - Procedure - Dismissal
Cited

 
12 O.S. 1031, 
District Court, Power to Vacate or Modify its Judgments, When
Cited

 
12 O.S. 1031.1, 
Authorization to Correct, Open, Modify or Vacate Judgments - Time - Notice - Costs
Cited

Title 20. Courts

 
Cite
Name
Level

 
20 O.S. 30.2, 
Number of Divisions - Number of Judges - Assignment and Transfer
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA